## In re KENNY.

(District Court, W. D. Pennsylvania.  November 19, 1920.)

No. 7390.

**1. Bankruptcy ☜335—Validity of assignment of claims.**

Refusal of a referee to recognize assignments by creditors of an interest in their claims to another creditor in consideration of his assuming liability for the costs and expense of an action to recover assets, if unsuccessful, on the ground that the written assignments were insufficient, *held* error, where the consideration for the assignments was shown, and the assignors did not question their validity.

**2. Assignments ☜41—No particular form essential.**

No particular form is necessary to constitute a valid assignment of a debt, but it is sufficient if words are used which show an intention to transfer the debt for a valuable consideration.

**3. Bankruptcy ☜250 (1)—Where assets are recovered by one creditor, he may deduct expenses.**

Where one creditor on his own responsibility has recovered assets of the estate by action, and is entitled to be reimbursed the reasonable expense of such recovery, under Bankruptcy Act, as amended in 1903 (Comp. St. § 9648), he may properly retain such expense from the proceeds of the judgment and pay over the remainder only to the trustee.

**4. Bankruptcy ☜369—Referee without authority to surcharge trustee's account not excepted to.**

A referee is without authority to surcharge the account of a trustee, unless exceptions thereto filed by parties in interest are sustained.

In Bankruptcy. In the matter of John F. Kenny, bankrupt. On review of order of referee. Reversed.

John J. Kennedy, of Pittsburgh, Pa., for bankrupt.

L. C. Barton, of Pittsburgh, Pa., for creditors.

S. W. Bierer, of Greensburg, Pa., for trustee.

J. R. Smith, of Greensburg, Pa., for exceptants.

THOMSON, District Judge.  This case presents the following situation:

The trustee of the bankrupt finds no assets of any kind, and the creditors refuse to advance to him the money necessary to test certain preferences alleged to have been given by the bankrupt. R. G. Gamble & Co., a small creditor, thereupon proposed to advance the necessary funds and protect the estate from costs, if unsuccessful, provided the trustee would assist, and permit the use of his name as trustee, to bring and prosecute the necessary actions. To this the trustee assented. Gamble & Co. then sent each creditor a letter, proposing that, if the creditors would assign to them one-half of their respective claims, they would make the contest and pay all the costs, if unsuccessful; if successful, the creditors to pay their pro rata share of costs, whatever they were. Of the 32 creditors, all but 4 assented, and made the necessary assignments, which were filed with the referee. The Scottdale Savings & Trust Company, one of the four, was afterwards paid in full by the indorser on its note, and is thus eliminated from this case.

Under this agreement, Gamble & Co. employed L. C. Barton, Esq., as attorney, and commenced actions in this court against several creditors. In these proceedings they recovered a judgment against the First National Bank of Scottdale, after two trials, which judgment, after a vigorous contest, was affirmed by the Circuit Court of Appeals, and the amount thereof, namely, $3,917.16, was paid to Mr. Barton as attorney. From this fund the attorney deducted a fee of $1,500 and $467.53 costs and expenses, paying the balance, $1,949.63, to the trustee. The latter filed his account, charging himself with the full amount of the judgment, and claiming credit for the amount so paid; his account showing a balance for distribution of $1,513.32. Several creditors filed exceptions to the account, which came up for consideration before the referee, and upon which testimony was taken. The exceptions and amended exceptions, as filed, were objected to by Gamble & Co. as "vague, indefinite, and uncertain"; but this contention was not sustained. On the merits of the exceptions, the referee says:

"The contention of exceptants is that the trustee made all payments, for which he has taken credit in his account, to R. G. Gamble & Co. and L. C. Barton, without authority; that L. C. Barton has no employment as attorney for the trustee, and, if he had, the trustee had no authority to employ him; and that, if these payments were made to Gamble & Co. and L. C. Barton in pursuance of an agreement existing between Gamble & Co. and various creditors, the trustee must be surcharged the amount paid, because neither the agreement nor a copy of it has been appended to the agreement."

The referee held that Mr. Barton did not act as attorney for the trustee, and was not employed by him, but was employed by, and did act for, R. G. Gamble & Co., in prosecuting the right of the bankrupt estate against the First National Bank of Scottdale; that the trustee after making a number of unsuccessful attempts to collect from the creditors the funds necessary to prosecute the suit, lending his name to Gamble & Co. for the purpose of prosecuting the action, and that the latter did so, that company to bear the expenses, if the issue thereof was adverse; that under the amendatory act of 1905 (Comp. St. § 9648), where property of the bankrupt was wrongfully transferred, as here, and the same has been recovered for the benefit of the estate by the efforts of one or more creditors, such creditor or creditors have a preferred claim for the reasonable expenses of such recovery. The referee concluded his findings by holding as follows:

"Because it is impossible to escape the finding in this case that property of the bankrupt, transferred and concealed by him before the filing of the petition, has been recovered for the benefit of the estate of the bankrupt by the efforts and expenses of one of the creditors, it is required that the demurrer of Mr. Barton to the exceptions filed be sustained, and the exceptions accordingly dismissed."

This disposed of the exceptions filed, and it will be noted that no exceptions had been filed by any creditor, alleging that the amount paid to Gamble & Co. was excessive or unreasonable. Notwithstanding this legal situation, the referee on his own motion surcharged the trustee with the sum of $1,967.53, and with whatever other sums

shall appear by the account to have been disbursed by him to Gamble & Co. for their expenses incurred in prosecuting the action in question.

[1] The referee also overruled the proofs of assignment of the respective claims of the Union Special Overall Company, of Cincinnati, the Victoria Waterproof Company, of Connecticut, L. Harris & Co., of Philadelphia, and the Commercial Skirt Manufacturing Company. The first three were overruled because such assignments lacked certainty, and the last because no valid consideration appears on the face of the purported assignment. The referee so held, although none of these creditors objected, or are now objecting, to the validity and binding effect of the said assignments. In this I think the referee erred. The letter sent to each creditor was clear and distinct in its terms. In reply to that letter, the Union Special Overall Company, under date of March 17, 1916, stated:

"Gentlemen: Replying to your letter of the 10th inst., advise that we are willing to accept the proposition in your letter. The amount owing us is $71.25, and you will certainly be entitled to what you ask if you succeed in winning."

Under date of April 20, 1916, the Victoria Waterproof Company replied as follows:

"Gentlemen: In replying to yours of the 18th, we beg to state that we will assign to you half of the amount of our claim, and you may do whatever you please in this matter. If there are any papers to be filled out, we will gladly do so."

Under date of March 13th, L. Harris & Co. replied:

"In replying to yours of the 11th, will say that we will agree to your proposition mentioned therein; that is, if you win the fight, we are to let you have half of what you get for our claim, and pay our pro rata share of the costs out of the other half; if you, on the other hand, are unsuccessful, you are to pay all the costs."

The Commercial Skirt Manufacturing Company, under date of March 13th, replied as follows:

"Gentlemen: Replying to yours of March 11th beg to state that we will assign the J. F. Kenny, of Scottdale, Pa., account to you on the conditions as mentioned in your letter. We do this in order to prevent, if possible, other people in cheating their creditors, more than expecting any financial results."

[2] These letters were filed and offered in evidence before the referee, and the latter, acting under the provisions of General Order 21, subd. 3 (89 Fed. ix, 32 C. C. A. xxii), sent to said creditors the notice required by said order, and none of them objected, or now object, to such assignments. The authorities agree that no particular form is necessary to constitute a valid assignment of a debt or other chose in action. If words are used which show an intention to transfer the chose in action to the assignee for a valuable consideration, this is sufficient. Ruple v. Bindley, 91 Pa. 296; Moeser v. Schneider, 158 Pa. 412, 27 Atl. 1088.

But, if the assigning creditors do not complain, who has a right to be heard? It is clear that, if their action is satisfactory to them, the rest of the world must be satisfied. Among all the creditors, one ob-

jection only was made to Gamble & Co.'s proof of an assignment; this by the attorney representing the International Raincoat Company. An examination of the correspondence does not convince me that there is substantial merit in the objection. To the letter of Gamble & Co., on April 24th, the attorney to whom the letter had been referred wrote:

"My clients are willing to accept your proposition, and if you will send me assignment, such as you want, I will see that it is executed."

An assignment in the usual form was sent, but it was not executed; the attorney objecting that it provided that, in case the action was successful, the Raincoat Company should pay its proportion of the expense out of the half received by them. The assignment appears to have been in harmony with Gamble & Co.'s letter, which had theretofore been accepted as satisfactory.

[3] As to the surcharge of the referee, made on his own motion, without any exceptions before him attacking the reasonableness of the charge, that a party who recovers a fund for the common benefit of creditors is entitled to have his costs and expenses out of the fund is clear from the act of Congress. Trustee v. Greenough, 105 U. S. 527, 26 L. Ed. 1157. The money having been paid to the attorney of the party who recovered it, he had a lien upon it for his fees, and the payment of the balance is all that could lawfully be demanded of him. Meighan v. Twine Co., 154 Fed. 346, 83 C. C. A. 124. Balsbough v. Frazer, 19 Pa. 95.

[4] When the exceptions to the account of the trustee were dismissed by the referee, on what theory could he be surcharged? Gamble & Co. were the prosecutors of the suit; the trustee's name being used simply as a legal necessity. They recovered the fund and received it. They were entitled, not only as assignees to their half of the claim recovered, but to their costs and expenses as well. They were not bound to pay over the entire fund, and come knocking at the door of the estate for repayment of their share. They had a lien on that which was theirs, and had a right to retain it. The balance only, whatever that might be, the estate had a right to demand. It is said in Stitzel's Estate, 221 Pa. 227, 70 Atl. 749, 18 L. R. A. (N. S.) 284:

"A surcharge is an adjudication against the accountant, which cannot be made without notice to him and an opportunity to be heard before he is condemned; and a surcharge of the kind made in this case for an overpayment of counsel fees is not one that can be made at all by the court, without an exception by some interested party before it. There is no question of law or public policy involved, simply a question of the proper or improper amount paid for a proper charge."

It has been well said in Huber v. Reily, 53 Pa. 112, that a complainant is an essential part of a court, and that the court has no authority to proceed to make a decree on objections to credits in an account, except upon complaint by a party showing an interest therein, who appeared, filed exceptions, and became liable for costs. Other authorities to the same effect might be cited. It is said:

"In the absence of exceptions duly taken, a court has no authority to surcharge accountant by striking out credits in the account, or to do anything in such cases but examine, and after due consideration confirm, the account, and

if exceptions be filed, the court cannot surcharge accountant further than the exceptions demand. Gaston's Appeal, 1 Pitts. (Pa.) 48; Mengas' Appeal, 19 Pa. 221." Stitzel's Estate, 221 Pa. 227 (vide brief of attorney for appellant).

If this is true of the court, a fortiori is it true of a referee? Under General Order 17 (89 Fed. viii, 32 C. C. A. xix) and rule 9 of this court in bankruptcy, the final account of trustees is referred as of course to the referee for audit, who gives to the creditors notice of a meeting to examine and consider same. Exceptions may be filed at or before such meeting, and the referee shall dispose of the same and declare a final dividend. I know of no authority or principle of legal procedure which would justify the referee, where no exceptions were filed, or, having been filed, were overruled, to surcharge the trustee, as was done in this case. It may well be that the charge was greater than on full hearing might be awarded. But it is sufficient to say that there is no complainant before the court making such averment. No such question was raised before the referee, nor any testimony taken upon it.

As there appears to have been condemnation without a day in court, and as well-defined and orderly procedure is far more vital in the administration of justice than the allowance or rejection of some particular claim, the report and order of the referee, surcharging the accountant and dismissing the assignments, hereinbefore specifically referred to, is reversed and set aside.