**In re Jawad Mahmoud HASHIM, Debtor.**

**Arab Monetary Fund, Appellant,**

v.

**Jafar Hashim; Maryam Salass; Ali Salass; Jawad Mahmoud Hashim; JHH Canadian Capital Corporation; 1954920 Nova Scotia Limited; Mark D. Hashimoto, Chapter 7 Trustee; Louis A. Movitz, Chapter 7 Trustee; 1954933 Nova Scotia Limited; Westfalen Bank International, S.A., Appellees.**

BAP No. AZ–07–1145–KDN.

Bankruptcy No. 94–09453–CGC.

Adversary No. 96–00668–CGC.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Oct. 25, 2007.

Filed Dec. 6, 2007.

Donald L. Gaffney, Esq., Snell & Wilmer, L.L.P., Phoenix, AZ, for Appellant.

Warren J. Stapleton, Esq., Stinson Morrison Hecker, LLP, Phoenix, AZ, for Appellees.

Before: KLEIN, DUNN and NEITER *, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The appellant won a $49.6 million judgment against the debtor, followed him into bankruptcy court, and filed an adversary proceeding to recover embezzled funds allegedly transferred or concealed by the debtor, in which it named the chapter 7 trustee as a defendant. The court declined to permit appellant to maintain an action to recover for the benefit of the estate and denied the trustee's motion to be realigned as plaintiff real party in interest, leaving appellant only with nonbankruptcy causes of action on which it did not prevail at trial. We AFFIRM the result of trial, but REVERSE the pretrial dismissal of the bankruptcy avoiding action counts.

If a court does not authorize a creditor under 11 U.S.C. § 503(b)(3) to recover, for the benefit of the estate, property that was transferred or concealed by the debtor, then Federal Rules of Civil Procedure 17(a) and 19(a) require that the court realign as plaintiff a bankruptcy trustee who is a defendant.

## FACTS

Pertinent factual background appears in *Arab Monetary Fund v. Hashim (In re Hashim)*, 213 F.3d 1169, 1170–71 (9th Cir. 2000).

The debtor Jawad Hashim ("Hashim") was, from 1977 to 1982, President and Director General of the Arab Monetary Fund ("AMF"), an organization based in the United Arab Emirates designed as a Middle Eastern Islamic counterpart to the International Monetary Fund. At the end of his term, Hashim, his spouse Salwa Al–Rufaiee ("Salwa"), and sons Jafar and Omar emigrated to Canada.

Hashim was prosecuted in the United Arab Emirates *in absentia* for embezzlement, forgery, and criminal breaches of trust, was convicted, and was ordered to pay the AMF $80,539,412.

In 1988, the AMF initiated proceedings in England in the High Court of Justice Chancery Division in which Hashim, his spouse, and sons were among the defendants. Following a six-month trial, judgment was entered in 1994 that directed Hashim to pay the AMF $49,648,110.83 in damages, plus $83,501,716.94 in interest fixed through July 14, 1994 ("English Judgment"). The English court also made a lesser award against Salwa and determined that their sons were wrongful recipients, and hence constructive trustees, of various funds and properties traceable to

---

* Hon. Richard M. Neiter, Bankruptcy Judge for the Central District of California, sitting by designation.

AMF funds, including cash and real estate in Canada.

Upon conclusion of the English litigation, Hashim moved to Arizona, where Jafar already lived. The AMF filed an action in the Maricopa County (Arizona) Superior Court to domesticate the English Judgment, and the bankruptcy cases ensued.

Hashim filed a chapter 7 case in the District of Arizona on October 24, 1994. Louis A. Movitz was assigned as bankruptcy trustee. Hashim eventually waived his discharge.

Jafar Hashim filed a chapter 11 case on November 10, 1994, which case was converted to chapter 7, with Mark Hashimoto appointed as trustee. In April 2003, the court denied Jafar's discharge.

The bankruptcy court's order sustaining an objection to claim for costs based on the English Judgment was reversed by the Ninth Circuit on a comity theory. *Hashim*, 213 F.3d at 1172–73.

As part of its efforts to trace funds, the AMF unearthed information that JHH Canadian Capital Corporation ("JHH"), which Hashim, Salwa, and Jafar formed in 1986, and of which Jafar became sole owner, officer, and director in 1987, had received at least $511,451 of funds traceable to AMF that were used to purchase interests in property. It also obtained information that Jafar had created two Nova Scotia shell corporations, 1954933 Nova Scotia and 1954920 Nova Scotia, with Jafar's spouse Maryam Salass as figurehead, to hide identities of investors in Canadian properties from the AMF. It also identified a transfer that had been made through Westfalen Bank International, S.A. Luxembourg.

The AMF filed the eight-count complaint that is the basis of this appeal on August 26, 1996, which appears to have been soon after the information was developed. In addition to the Hashim-related defendants, it named both bankruptcy trustees as defendant parties.

### 1. *Trustee Avoiding Powers*

Four counts sought to recover for the bankruptcy estate under Arizona's Uniform Fraudulent Transfer Act ("UFTA"), Ariz.Rev.Stat. §§ 44–1001 to 44–1010, and 11 U.S.C. § 544.

As noted, the chapter 7 trustees were named as defendants. The AMF explained that it was motivated to act in this fashion because it was concerned that a statute of limitations might expire with respect to transfers that had been concealed before the respective trustees could decide whether to act.

On October 22, 1996, Hashim's trustee Movitz and the AMF stipulated that the AMF could pursue avoidance actions on Movitz's behalf because the AMF was better able to investigate and prosecute avoidance actions than the trustee. The bankruptcy court disapproved the stipulation on January 10, 1997. The district court affirmed that decision.

Trustee Movitz, as real party in interest and defendant, responded to the disapproval of the Movitz–AMF stipulation with a motion filed February 13, 1997, pursuant to Federal Rules of Civil Procedure 17(a) and 19(a), to be realigned as a plaintiff.

Trustee Movitz's motion to be realigned as a plaintiff on the fraudulent transfer counts (counts III–VI) was not acted upon until February 26, 1998, when the court denied the motion. That denial was followed by a ruling issued March 12, 1998, granting a motion to dismiss those four counts because the AMF lacked standing to assert avoiding actions owned by the trustee. That left for trial only the AMF's counts founded on Arizona common law.

### 2. *Common Law Counts*

Trial on the four common law counts was held from September 2004 to April 2005. Findings were rendered on January 3, 2007.

The AMF alleged Arizona fraud[1] in Counts I (injunction) and II (damages) and alleged an actionable Arizona common law conspiracy to commit fraudulent conveyances in Counts VII (damages) and VIII (declaratory judgment and injunction).[2]

The court ruled that Arizona law requires proof of all elements of the common law causes of action by clear and convincing evidence. Thus, the AMF, which does not appeal the ruling, had to prove by clear and convincing evidence that the source of funds in the various challenged transactions derived from misappropriated AMF money.

The funds at issue are proceeds from sales of Don Mills Bowl Shopping Centre ("Don Mills")[3] and of Suite 803, Rosehill Avenue, ("Suite 803"), Canadian properties that the English Court had earlier determined were purchased with the AMF's funds.

In 1986, Don Mills and Suite 803 were sold. About C$1,750,000 of Don Mills proceeds were transferred to Tayeb, supposedly as repayment of a loan. Thereafter, a holding company, Landglaze Holdings, SA ("Landglaze"), loaned JHH C$1,500,000. The AMF contends that Tayeb controlled Landglaze and that the loan was traceable to the Don Mills sale.

Suite 803 netted about C$1,350,000, from which proceeds C$511,451 was given to Jafar as capital for JHH. The English Court determined that JHH received at least C$511,451 directly traceable to proceeds from the sale of Suite 803.

At trial, while the parties agreed JHH was capitalized with the Landglaze loan and Suite 803 proceeds, the appellees contend that the AMF did not establish that Tayeb had funded Landglaze, either with Don Mills proceeds, or otherwise.

In its findings, the court ruled that the AMF did not establish by clear and convincing evidence its claims sounding in fraud and conspiracy to commit fraudulent conveyances based on the Don Mills and Suite 803 sales. As to Don Mills, the court was not clearly convinced that AMF funds were used to purchase assets or were shuttled to multiple overseas accounts. As to Suite 803, it ruled that the evidence did not establish that the AMF's damages exceeded the combined value of two properties the AMF had already recovered (Chambly I and St. Luc).

The court, however, was persuaded by clear and convincing evidence that Jafar

---

1. The Arizona tort of fraudulent misrepresentation has nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the defendant's knowledge of its falsity or ignorance of its truth; (5) the defendant's intent that it should be acted upon by the plaintiff and in the manner reasonably contemplated; (6) the plaintiff's ignorance of its falsity; (7) the plaintiff's reliance on its truth; (8) the plaintiff's right to rely thereon; and (9) the injury proximately caused. *Carrel v. Lux*, 101 Ariz. 430, 420 P.2d 564, 568 (1966).

2. The Arizona action for conspiracy to commit fraudulent conveyances has four elements: (1) fraudulent conveyance (made with intent to hinder, delay, or defraud creditors); (2) agreement between two or more persons to commit a fraudulent conveyance; (3) damages resulting from the conveyance traceable to the conspiracy; and (4) inadequate equitable remedies under UFTA. *Pearce v. Stone*, 149 Ariz. 567, 720 P.2d 542, 545 (1986); *McElhanon v. Hing*, 151 Ariz. 386, 728 P.2d 256 (1985).

3. Don Mills was purchased in 1984 by Rosehill Trust, of which Hashim and Salwa were trustees, and three trusts controlled by Nezhet Tayeb ("Tayeb"), a Hashim associate. Suite 803 was purchased in 1983 and sold by Salwa in 1986.

made representations to the AMF about the properties at issue that were false, that he knew were false, and upon which he intended the AMF to rely. Evaluation of Jafar's testimony was affected by the court's assessment of his lack of credibility, which led it to announce it would give little weight to any Jafar testimony not corroborated by other evidence.[4]

In the presentation of its evidence, the AMF relied on a forensic accounting expert witness, whose testimony was equivocal about tracing Don Mills sale proceeds.[5] The focus was on whether money Tayeb received from the Don Mills sale then flowed through Landglaze to JHH as a C$1,500,000 loan for the purchase of certain properties (Chambly II and Duke & William), and whether Don Mills proceeds flowed through Landglaze for purchase of the relevant share in the Yonge & Gamble property.[6]

Taking the expert's testimony together with circumstantial evidence, the court concluded it was not persuaded by clear and convincing proof that the Don Mills proceeds attributable to the AMF were used to purchase other properties.

The court entered judgment in favor of the appellees on the fraud and conspiracy to commit fraudulent conveyance claims (Counts I, II, VII, and VIII) on April 5, 2007.

This timely appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

(1) Whether it was error to refuse to realign the bankruptcy trustee as the real party in interest and plaintiff in the adversary proceeding.

(2) Whether the court erred in not making certain inferences from Jafar's testimony regarding the transactions at issue.

(3) Whether the court accorded appropriate evidentiary weight to the testimony of plaintiff's forensic accountant.

## STANDARDS OF REVIEW

■ Realignment of a party is reviewed de novo. *Smith v. Salish Kootenai Coll.,* 434 F.3d 1127, 1133 (9th Cir.2006) (en banc); *Prudential Real Estate Affiliates v. PPR Realty, Inc.,* 204 F.3d 867, 872–73 (9th Cir.2000), *citing City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941); *Standard Oil*

---

**4.** The court explained:

Jafar's testimony in these bankruptcy proceedings has, from the beginning, been incomplete, misleading, vague, contradictory and outright false. Many reasons have been given; he was unfamiliar with the court proceedings; he didn't trust the AMF after the English Proceedings; he didn't understand the questions; or perhaps he just lied .... The problem with a liar in court is that when he decides to tell the truth, no one believes him.

(Mem. Decision at 22:2–9.)

**5.** "I don't know where Landglaze got its money from. I don't even know that it came from

Nezhet Tayeb for that matter." Hr'g Tr. 122:9–15, Dec. 2, 2004.

**6.** This share was in the name of HT Canadian Capital Corporation ("HT"), which purchased a ten percent interest in Yonge & Gamble, as a joint venture. HT was formed in March 1987 by Hashim and others (including Tayeb) and acquired by Jafar in November 1988, who became HT's sole director, president, and secretary. According to appellees, HT was an investment vehicle acting on behalf of Landglaze for tax purposes. The AMF alleged that HT was funded with Don Mills proceeds.

*Co. v. Perkins,* 347 F.2d 379, 382 (9th Cir.1965).

■ We review findings of fact for clear error and conclusions of law de novo. *Carrillo v. Su (In re Su),* 290 F.3d 1140, 1142 (9th Cir.2002). A finding is clearly erroneous when, despite evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Findings based on credibility receive deference. Fed. R.Civ.P. 52(a), *incorporated by* Fed. R. Bankr.P. 7052; *Anderson,* 470 U.S. at 573–75, 105 S.Ct. 1504; *Hansen v. Moore (In re Hansen),* 368 B.R. 868, 874–75 (9th Cir.BAP2007).

## DISCUSSION

We address the refusal to realign the bankruptcy trustee from the status as a defendant to that of plaintiff before turning to issues involved in the court's evaluation of the trial evidence and the credibility of certain witnesses.

## I

Bankruptcy trustee Movitz, who was a named defendant in the complaint, made a motion to be realigned as a plaintiff because he is the real party in interest. The specific relief requested in the motion was an order: "realigning and designating, and/or to the extent necessary and appropriate, adding the Trustee as a Plaintiff." The denial of that motion is assigned as error.

Four salient factors affect our conclusion that the denial of this motion was error. First, the bankruptcy trustee was a named party defendant from the outset who was subject to the realignment doctrine. Second, the AMF was eligible to be authorized by the court under § 503(b)(3) to prosecute the fraudulent transfer claims on behalf of the estate and in the name of trustee Movitz, who had consented to the AMF's prosecution. Third, prompt steps were taken to obtain the agreement of trustee Movitz to seek permission for the AMF to prosecute the action under § 503(b)(3). Fourth, prompt steps were taken to realign Movitz as a party plaintiff following the court's refusal to grant § 503(b)(3) permission.

## A

■ Although no Federal Rule of Civil Procedure directly provides for realigning parties, the well-settled realignment doctrine underlies several rules, including, as relevant here, Rules 17(a) and 19(a). Fed. R.Civ.P. 17(a), *incorporated by* Fed. R. Bankr.P. 7017;[7] Fed.R.Civ.P. 19(a), *incor-*

---

7. Rule 17(a) provides:
(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
Fed.R.Civ.P. 17(a). Rule 7017 provides an exception for the provision in Rule 2010(b) permitting an action on a trustee's bond to be brought in the name of the United States for the use of the injured entity. Fed. R. Bankr. P.2010(b) & 7017.

*porated by* Fed. R. Bankr.P. 7019.[8]

Under the realignment doctrine, as explained by the Supreme Court, when a person who should be plaintiff is not prepared to participate in the action, the solution is to make that person "a party defendant by process and he will be lined up by the court in the party character which he should assume." *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468, 46 S.Ct. 166, 70 L.Ed. 357 (1926).

The doctrine articulated in *Independent Wireless* was a basis for the provision in Rule 19(a) that if a "person should join as a defendant but refuses to do so, the person may be made a defendant." Fed. R.Civ.P. 19(a), adv. comm. note to 1937 adoption (citing *Independent Wireless*).

Until revised in 1966, however, Rule 19 contained terms such as "indispensable," "necessary," and "joint interest" that were criticized as unduly formalistic in a manner that "distracted attention from the pragmatic considerations which should be controlling." *Id.*, adv. comm. note to 1966 amendments.

Two criticisms of the pre–1966 version of Rule 19 seem to have replicated themselves in the present litigation. First, there was what the Rules Advisory Committee described as the "jurisdiction fallacy" in which some courts held that the absence of an "indispensable" party deprived a court of jurisdiction to adjudicate between the parties already joined. Second, there appears to have been "undue preoccupation with abstract classification of rights or obligations." *Id.* ("Defects in the Original Rule"). These problems prompted the 1966 revision.

As reformed in 1966, Rule 19 continues to assume the vitality of the realignment doctrine and emphasizes that the purpose of the rule is to bring into the court all persons needed in order to afford complete relief, which typically is equated with the concept of a just adjudication. 7 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE §§ 1601–04 (3d ed.2001).

By joining the chapter 7 trustee as a party defendant in the complaint commencing the adversary proceeding, the AMF invoked the joinder provision of Rule 19(a). The AMF recognized that the chapter 7 trustee was a person whose presence, in the context of a trustee avoiding power, was needed in order to be able to afford complete relief among those already parties. A necessary consequence of making the trustee a party defendant was to trigger the realignment doctrine, which required that the trustee be regarded as a plaintiff.

---

**8.** Rule 19(a) provides:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. *If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.* If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

Fed.R.Civ.P. 19(a) (emphasis supplied). Rule 7019 provides exceptions relating to lack of subject-matter jurisdiction and improper venue. Fed. R. Bankr.P. 7019.

## B

■ Nor can the AMF be said to have been devoid of standing when it invoked Arizona's UFTA. It had at least the minimum required for constitutional standing. As the master creditor in the bankruptcy case, it would be the main pecuniary beneficiary of a successful avoiding action and would be adversely affected by a lapse of the ability to obtain such a recovery. Indeed, the bankruptcy court agreed that the AMF had such standing.

In addition, the AMF had standing to prosecute an Arizona UFTA action in a nonbankruptcy court if there had not been a bankruptcy case pending. UFTA provides a remedy that is generally available to creditors, regardless of bankruptcy.

More important, the AMF also had statutory standing in bankruptcy under § 503(b)(3)(B), which recognizes that creditors may recover, for the benefit of the estate, property transferred by the debtor and be compensated if court approval is obtained before there is a recovery. 11 U.S.C. §§ 503(b)(3)(B) & (4).[9]

The creditor-recovery provision of § 503(b)(3)(B) carried forward a provision in the Bankruptcy Act of 1898 that authorized administrative expense compensation: "where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, is recovered for the benefit of the estate of the bankrupt by the efforts and at the cost and expense of one or more creditors, the reasonable costs and expenses of such recovery." Bankruptcy Act § 64a(1), 11 U.S.C. § 104(a)(1) (redesignated from § 64b(2) in 1938) (repealed 1978).

Between 1898 and 1903, judges created the authority for creditors to recover for the benefit of the estate. In 1903, Congress added then-§ 64b(2) to the Bankruptcy Act. *Chatfield v. O'Dwyer*, 101 F. 797, 799–800 (8th Cir.1900); *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 291–92 (9th Cir. BAP 2005); *In re Godon, Inc.*, 275 B.R. 555, 561 (Bankr.E.D.Cal.2002); 3A James Wm. Moore et al., Collier on Bankruptcy ¶ 64.104 n. 6 (14th ed. rev.1975) ("Collier 14th ed.").

Creditors acting for the benefit of the estate were allowed to sue in the name of the bankruptcy trustee. *In re Kenny*, 269 F. 54, 57 (W.D.Pa.1920) (creditors "were the prosecutors of the suit; the trustee's name being used simply as a legal necessity"); *Godon* 275 B.R. at 562; *cf. A.C. James Co. v. Reconstr. Fin. Corp. (In re W. Pac. R.R. Co.)*, 122 F.2d 807, 808 (9th Cir.1941); *Australia v. MacDonald (In re Patterson–MacDonald Shipbldg. Co.)*, 288 F. 546, 548 (9th Cir.1923); *Ohio Valley Bank v. Mack*, 163 F. 155, 156 (6th Cir. 1906); 3A Collier 14th ed. ¶ 62.29[2.4].

An initial uncertainty regarding creditor recovery under Bankruptcy Act § 64a(1) was what approval, if any, was needed in

---

9. Section 503(b)(3)(B) provides:
   (b) After notice and a hearing, there shall be allowed administrative expenses ... including—(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—... (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor.
   11 U.S.C. § 503(b)(3)(B).
   Section 503(b)(4) authorizes:

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.
11 U.S.C. § 503(b)(4).

order to qualify the creditor for reimbursement of expenses and fees. It was early established that the trustee could give the creditor permission. *In re Stearns Salt & Lumber Co.*, 225 F. 1, 3 (6th Cir.1915). Absent permission by the trustee, some courts required judicial permission. *In re Eureka Upholstering Co.*, 48 F.2d 95, 96 (2d Cir.1931); *Lahijani*, 325 B.R. at 291 n. 15.

Eventually, the settled practice became, as described in the contemporaneous *Collier* treatise, that a creditor could file an action and thereafter give the trustee an opportunity to participate in the lawsuit:

> Yet orderly administrative practice calls for a qualification. It is primarily for the trustee to decide whether the estate should embark on an attempt to recover concealed or transferred assets. The right to attorney's fees is, therefore, limited to cases in which the services are rendered either before a trustee has been appointed or in which a trustee has been given an opportunity to intervene and has refused to do so, even though the creditor is allowed to proceed in the trustee's name.

3A COLLIER 14th ed. ¶ 62.29[2.4], at 1578 (footnotes omitted).

In the 1978 Bankruptcy Code, Congress codified the Bankruptcy Act § 64a(1) practice by requiring in § 503(b)(3)(B) that there be court approval of the action before there is a recovery for which expenses and professional fees may be compensated by the estate. 11 U.S.C. § 503(b)(3)(B). The Bankruptcy Act practice, however, was otherwise unchanged.

Since the rule of construction regarding transition from the Bankruptcy Act to the Bankruptcy Code is that judge-made doctrines are presumed to be carried forward except to the extent Congress indicated contrary intent, *Kelly v. Robinson*, 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), it follows that the above-quoted description from the *Collier* treatise retains vitality with one modification: The right to attorney's fees is, therefore, limited to cases in which the services are rendered either before a trustee has been appointed or in which a trustee has been given an opportunity to intervene and has refused to do so, *and* [even though] the creditor is allowed to proceed in the trustee's name.

Although § 503(b)(3)(B) is often described as a "prior permission" requirement, precision requires sharper focus. The statute does not mandate that judicial approval be obtained before the action is filed. Rather, it authorizes administrative expense awards only if the court approves the action *before recovery* is obtained.

This temporal distinction in § 503(b)(3)(B) between filing and recovery is important in the contexts of time bars and actions pending in nonbankruptcy courts at the time of bankruptcy. If judicial permission were to be essential before an action could be filed, then a purpose of the statute easily could be frustrated. Obtaining permission takes time and, if resisted, can devolve into satellite litigation in which an opponent's agenda could be to stall until after the action is time-barred.[10] Moreover, § 503(b)(3)(B) accommodates the possibility that a creditor's UFTA ac-

---

10. The act of filing an avoiding action that seeks to recover for the benefit of the estate and that names the bankruptcy trustee as defendant, who is eligible for realignment as a plaintiff, does not offend 11 U.S.C. § 362(a)(3) as an "act ... to exercise control over property of the estate." It would be a strange result if the operation of the automatic stay barred the filing of an action to preserve property of the estate in the face of a looming time bar, thereby causing the estate to lose a potentially valuable right.

tion pending at the time of bankruptcy may be removed to federal court.

While the standard—and better—practice is to obtain permission before filing an action, such a requirement would be dysfunctional when a creditor learns of facts supporting a meritorious avoiding action too late to permit a trustee to evaluate whether to sue before a time bar occurs or in the situation where a creditor's avoiding action is pending at the time of bankruptcy. For these reasons, § 503(b)(3)(B) permits the action to be filed and permission to be obtained after filing, but before recovery.

We are mindful that in our own decisions we have sometimes referred to "prior" permission without being precise. *E.g., Lahijani,* 325 B.R. at 291; *COM–1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.),* 278 B.R. 189, 197 (9th Cir. BAP 2002); *Hansen v. Finn (In re Curry & Sorensen, Inc.),* 57 B.R. 824, 828 n. 3 (9th Cir. BAP 1986). But, those occasions have not presented the potentially short-fused time bar problem that is present in this appeal. The *Lahijani* context was a remand to consider whether to authorize such a recovery where the possibility had not earlier been raised. In *Maximus Computers,* § 503(b)(3)(B) was an unargued basis for affirming an otherwise defective trial court decision. In *Curry & Sorensen,* we were dealing with a challenge to issuance of corporate stock that did not affect "property of the debtor" and the avoidance of which would have had no effect on the estate. *Curry & Sorensen,* 57 B.R. at 829.

As none of these cases involved a creditor who sued in the context of a looming time bar and named the chapter 7 trustee as defendant, none makes a controlling holding on the question of the stage at which § 503(b)(3)(B) judicial permission

must be obtained. Thus, although we wish we had used a pencil with a sharper point when writing them, those decisions did not hold that permission is required before an action is filed, despite statutory language that permission is needed before recovery is obtained. As the Supreme Court notes, "[i]t is to the holdings of our cases, rather than their dicta, that we must attend." *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 379, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

Our controlling decision on the temporal question is *Spaulding Composites,* in which we clarified that *Curry & Sorensen's* reference to prior approval states what is plainly the better practice but does not preclude requests for court approval that are made after the complaint is filed. *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. (In re Spaulding Composites Co.),* 207 B.R. 899, 904–05 (9th Cir. BAP 1997).

In short, even though a bankruptcy trustee may have a superior claim to standing, the AMF was not without standing to assert the Arizona UFTA causes of action on behalf of the estate and could, after filing the complaint, seek and obtain permission to prosecute the action for the benefit of the estate.

C

Recognizing that § 503(b)(3)(B) requires the court's permission for a creditor to recover property for the benefit of the estate in order to qualify for an administrative expense, the AMF promptly obtained the agreement of bankruptcy trustee Movitz that it should be allowed to prosecute the action. That agreement was timely presented to the court.

Although arguments by the Hashim-re-

lated defendants [11] that misconstrued our *Curry & Sorensen* decision apparently led the court to reject the AMF-trustee § 503(b)(3)(B) litigation agreement, that order is not questioned in this appeal.[12]

What matters about that order for our purposes is that the action by the AMF to make the trustee a defendant in the initial complaint and then promptly to obtain agreement of the trustee was a correct strategy that immediately preceded the filing of the motion to realign the trustee as a plaintiff.

### D

■ The specific order now in question is the order denying the motion to permit trustee Movitz to participate as a plaintiff. That motion was filed February 13, 1996, and denied February 26, 1997. The order also precipitated dismissal of the UFTA counts from the complaint for want of the real party in interest.

The relevant rules are straightforward. Rule 17(a) requires that the action be prosecuted in the name of the real party in interest. The court, however, cannot dismiss for want of the real party in interest until after the real party in interest has been afforded an opportunity to ratify the commencement of the action or join or substitute. Fed.R.Civ.P. 17(a). The motion to have Movitz designated as a plaintiff operated as a ratification of the AMF's commencement of the action.

Since trustee Movitz was already a party by virtue of having been named as a defendant in the complaint in the manner permitted by Rule 19(a), the correct procedural measure would have been realign-

ment as a plaintiff according to the realignment doctrine outlined above. Fed. R.Civ.P. 19(a).

Moreover, in context, the court's rejection of the § 503(b)(3)(B) litigation agreement between the AMF and the trustee made it mandatory that the court honor Movitz's request as bankruptcy trustee to become a plaintiff. He unquestionably was the real party in interest within the meaning of Rule 17(a) and was already a party by virtue of having been included as a defendant under Rule 19(a) in the complaint.

The AMF took the correct procedural steps to deal with a situation in which an action to recover property for the benefit of the estate came to light while a time bar loomed. It filed the action, naming the bankruptcy trustee as a defendant under Rule 19(a). The combination of the realignment doctrine and the real party in interest provisions of Rule 17(a) assured that the estate would not lose the benefit of a potentially meritorious avoiding action. This strategy was strictly according to the book.

Since the trustee promptly agreed that the action should be prosecuted for the benefit of the estate, this appeal does not present the problem of what would happen if the trustee repudiated the commencement of the action.

The Ninth Circuit's decision in *United States ex rel. Wulff v. CMA, Inc.,* 890 F.2d 1070, 1075 (9th Cir.1989), upon which the bankruptcy court relied, does not compel a different result. In *Wulff,* a complaint that was amended to reflect an acquisition

---

11. Defendants may lack standing to choose who will be prosecuting an action against them. *Cf. Fondiller v. Robertson (In re Fondiller),* 707 F.2d 441, 442–43 (9th Cir.1983) (appellate standing); *Maximus Computers,* 278 B.R. at 198 (same).

12. The order rejecting the § 503(b)(3)(B) agreement is inherently interlocutory and can be revisited on remand.

of a cause of action by assignment did not relate back under Rule 15 where the action had been commenced in circumstances in which a "party with no cause of action file[d] a lawsuit to toll the statute of limitations and [eight months] later obtain[ed] a cause of action through assignment." *Wulff,* 890 F.2d at 1075. Although *Wulff* contained dictum indicating that Rule 17(a) should not be used to circumvent a limitations period, that appeal did not present a Rule 17(a) issue of ratification, substitution, or joinder by the real party in interest. Nor had the plaintiff in *Wulff* made the party that later assigned its rights a party under Rule 19(a). Moreover, the Ninth Circuit has since clarified that *Wulff* is an exception that does not trump Rule 17(a). *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707, 712 (9th Cir.1992).

In *Kroll & Linstrom,* the Ninth Circuit rejected the argument based on *Wulff* that Rule 17(a) "ratification is improper if used to defeat a statute of limitations." *Kroll & Linstrom,* 957 F.2d at 712. Rather, it held that a trial court must accept a ratification by a real party in interest and that the "function of Rule 17(a) 'is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.'" *Id., quoting* Fed.R.Civ.P. 17(a) adv. comm. note. It proceeded to explain that a proper Rule 17(a) ratification by a real party in interest requires that the ratifying party, first, authorize continuation of the action, and, second, agree to be bound by the result of the lawsuit. *Id.*

The court was presented with a realignment motion by the bankruptcy trustee as real party in interest, in which the trustee effectively authorized the continuation of the action and agreed to be bound by the result of the lawsuit. In these circumstances, the court was required to accept that ratification and to realign the trustee as plaintiff.

Since the parties agree that a burden of preponderance of evidence governs UFTA causes of action, instead of the clear and convincing standard applicable to the common law actions that were tried, the error was not harmless. Accordingly, the orders denying the motion and dismissing the UFTA counts for lack of standing must be reversed.

## II

The AMF argues that the bankruptcy court erred in declining to use Jafar's false testimony as a basis to make negative evidentiary inferences or presumptions of fraud.[13]

In contrast, the appellees contend that the AMF confuses inferences (which are permissive) with presumptions (which are mandatory); and in this case, the court was permitted, but not required, to draw inferences suggested by the AMF.

The bankruptcy court ruled that the AMF did not prove that it was damaged as a result of the misrepresentations made by Jafar because it did not prove by clear and convincing evidence that its money was used to fund the various transactions even though it recognized that Jafar was not a credible witness.

■ Findings of fact based upon credibility are given particular deference on appeal. *Anderson,* 470 U.S. at 575, 105 S.Ct. 1504. The reviewing court must give due regard to the opportunity of the trial

13. Because we defer to the trial court's assessment of the evidence and do not perceive clearly erroneous findings of fact, we need not address the portion of the AMF's argument discussing such evidentiary issues as circumstantial evidence considered through the "badges of fraud" and spoliation.

court to judge of the credibility of witnesses. Fed.R.Civ.P. 52(a) *incorporated by* Fed. R. Bankr.P. 7052; Fed. R. Bankr.P. 8013.

■ This deference is also given to inferences drawn by the trial court. *Beech Aircraft Corp. v. United States,* 51 F.3d 834, 838 (9th Cir.1995); *Thiara v. Spycher Bros. (In re Thiara),* 285 B.R. 420, 427 (9th Cir. BAP 2002).

■ Where there are two permissible views of the evidence, the factfinder's choice between them is not clearly erroneous; this applies to credibility-based findings and to findings based on inferences from other facts. *Anderson,* 470 U.S. at 574, 105 S.Ct. 1504.

■ Moreover, when findings are based on determinations regarding credibility of witnesses, an even greater deference to the trial court's findings is demanded because only the trial judge is aware of variations in demeanor and tone of voice that bear on one's understanding of and belief in what is said. *Id.*

■ Application of the foregoing deferential principles here persuades us that the trial court did not clearly err in its conclusion that the AMF did not prove that it was the source of the funds in the various transactions.

Although the AMF argues that the court should have inferred fraud from Jafar's false statements, the court did not do so. The factfinder's choice between two permissible views of the evidence cannot be said to be clearly erroneous. *Id.*

Unless we are definitely and firmly convinced that the court erred, we will not set aside its judgment. The reviewing court oversteps the bounds of its duty if it undertakes to duplicate the role of the lower court. *Id.* at 573, 105 S.Ct. 1504.

Accordingly, the court did not err in declining to draw negative inferences and/or presumptions from Jafar's testimony in rendering its judgment that the AMF was unable to prove its money was used to fund the transactions at issue.

### III

■ The AMF also contends that the court did not accord the proper evidentiary weight to the expert's testimony and report in tracing the AMF funds. The AMF argues that, even if the expert could not demonstrate dollar-for-dollar tracing to prove that the funds in question were derived from monies that Hashim had misappropriated from the AMF, it still met its burden of proof given the magnitude of fraud in this case and that the testimony and report were uncontradicted. The reality is, however, that the court was not persuaded.

Although the AMF contends that the court incorrectly required proof to "a metaphysical certainty" that the Landglaze funds were derived from AMF funds, the expert's testimony was more equivocal ("I don't know where Landglaze got its money from. I don't even know that it came from Nezhet Tayeb for that matter."). The court's assessment of this testimony does not appear to constitute clear error.

The court held that, by relying entirely upon the equivocal forensic accounting testimony, AMF did not prove the essential element of fraud that it was damaged by misrepresentations. While the court was troubled by the pattern of deceit in Jafar's actions and previous testimony and recognized that fraud typically is proved by circumstantial evidence, it reasoned that the strength of such evidence in this case did not amount to clear and convincing proof of the source of funds.

We are not persuaded that the court erred in its assessment of the expert testi-

mony and report in determining that the AMF did not prove all applicable essential elements. We accord the trial court, as finder of fact, deference. As such, we are not definitely and firmly convinced that the court made a mistake in the evidentiary weight it accorded to the AMF's expert witness.

## CONCLUSION

The trial court did not err in concluding that the AMF did not prove by clear and convincing evidence that it was the source of the funds in the various transactions at issue. Affording the requisite deference to the trial court's evaluation of testimony, we perceive no clear error in its assessment of the testimony and other trial evidence. The decision following trial on counts I, II, VII, and VIII is AFFIRMED.

However, the court erred by refusing to realign the Hashim case trustee as a plaintiff and real party in interest in counts III–VI. Hence, we REVERSE the order denying that motion and the ensuing order dismissing the UFTA claims, and REMAND for further proceedings.