NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>FERDINAND GERTES and<br>EMMA R. DUTRO,<br><br>            Debtors.<br>_____<br><br>MIGUEL A. GARCIA,<br><br>            Appellant,<br><br>v.<br><br>FERDINAND GERTES; EMMA R.<br>DUTRO;<br><br>            Appellees.<br>_____ | BAP No.   CC-12-1257-HKiD<br><br>Bk. No.   11-24572-BR<br><br>Adv. No.  11-02484-BR<br><br><br><br><br><br>**M E M O R A N D U M**[1] |

Argued and Submitted on November 15, 2012
at Pasadena, California

Filed – December 5, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Miguel A. Garcia argued pro se; David
                Scott Hagen, Esq. argued for Appellees Ferdinand
                Gertes and Emma R. Dutro.

_____

Before: HOLLOWELL, KIRSCHER, and DUNN, Bankruptcy Judges.

_____

    [1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

Miguel Garcia (Garcia) appeals the bankruptcy court's judgment in favor of the debtors on his complaint to deny the debtors a discharge under § 727.[2] We AFFIRM.

## I.  FACTS

Ferdinand Gertes and Emma Dutro (Dutro) (the Debtors) filed a chapter 7 bankruptcy petition and schedules on April 4, 2011. On bankruptcy Schedule A - Real Property, the Debtors listed two properties in Carson, California.  One was their residence, purchased in 1986.  The other (the Property) was described as:

> 1/3 interest in [single family residence in Carson, California].  Debtors own a 1/3 interest in a single family residence . . . with Steve Saiz and the Bayside Apostolic Center, each of whom own a 1/3 interest.  The property was acquired by the owners in 7/07 for $899,000 with $200,000 down payment put up by the other two owners.  The intent was to develop the property by building condos but the real estate market changed while those plans were being developed.  The existing house has 5 bedrooms, 3 baths in approximately 2000 square feet and is occupied by 3 renters who pay a total of $2000 per month.  Current fair market value of property, per zillow.com search on 3/23/11 is $427,000. Property is subject to first trust deed in favor of Chase with balance of $743,000 and a municipal development loan of $200,000 which does not bear interest and would be due upon sale of the property.

Also in their schedules, the Debtors listed Garcia as an unsecured creditor with a claim of $78,000.  Garcia is an architect and contractor.  After Garcia and Dutro met in 2003, they worked together on several construction projects.  In 2007, Dutro contemplated developing the Property into a condominium complex (the Project), but she needed financing.  Garcia agreed

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

to lend Dutro money with the understanding that, in exchange, he would be given general contractor and architectural work on the Project.

With the help of Dutro's son, Garcia refinanced his own property and obtained a loan of $75,000, which he, in turn, lent to Dutro. On October 17, 2007, Dutro signed a note (Note) in favor of Garcia in the amount of $81,512.00, which represented the $75,000 loan plus transactional closing costs. Payment on the Note was due by October 17, 2010. The Note referenced that a deed of trust was to secure the Note. However, it appears that no deed of trust was ever executed or recorded.

Dutro made monthly interest payments on the Note from October 2007 through October 2008. She stopped making payments beginning in November 2008, and failed to repay the Note.

On July 13, 2011, Garcia filed a complaint against the Debtors objecting to their discharge pursuant to § 727(a)(4), (a)(7), and (a)(2). After the Debtors filed a motion to dismiss, Garcia filed an amended complaint on September 19, 2011 (the Complaint). In the Complaint, and in his pre-trial and trial briefs, Garcia's allegations focused on his contention that Dutro enticed him to refinance his property by promising him all contractor work on the Project and by promising him that a high return would be gained from the refinancing. He alleged that Dutro made the false and misleading promise that she would invest Garcia's money in the Project, when no such investment was ever made; he alleged that instead the Debtors used his money for their own personal use. Garcia also asserted that the Note should have been secured by a deed of trust that Dutro promised,

-3-

but failed, to record.

The Debtors denied the allegations. Dutro submitted a declaration stating that no collateral for the loan was ever contemplated by her or Garcia. She stated that Garcia's money was used to pay for architectural drawings and engineering for the Project and to service the debt on the Property. Dutro also stated that she had intended to complete the Project but the subsequent downturn in the real estate market made it too difficult. Therefore, she contended that she returned a portion of the Property to the former seller, and rented out the residence on the Property, retaining her one-third interest. The Debtors maintained that they fully disclosed their interest in the Property, the rental income, and monthly obligations on the Property.

On April 3, 2012, Garcia filed a reply brief with "additional facts." The additional facts were that although Dutro contended she purchased the Property with partners, Steve Saiz and the Bayside Apostolic Center, the Los Angeles County Recorder's Office as well as the Tax Assessor's Records showed that Dutro alone held title to the Property. Thus, Garcia shifted the focus of his allegations under § 727 to contend that the Debtors (1) concealed Dutro's full interest in the Property with an intent to hinder, delay, or defraud the bankruptcy trustee and creditors (§ 727(a)(2)); (2) failed to record the deed of trust that secured the Note and instead transferred the Property to insiders (§ 727(a)(2)); and, (3) failed to fully disclose their ownership of the Property on her bankruptcy schedules (§ 727(a)(4)).

A trial was held on May 9, 2012. Garcia and Dutro submitted testimony by declaration. Dutro also testified at the trial. Garcia submitted into evidence the Note and the records of the Los Angeles County Recorder's Office and Tax Assessor. At the trial, Garcia's counsel argued only the § 727(a)(4) claim that the Debtors should be denied a discharge because Dutro "failed to disclose the truth of the matter that she's a 100 percent owner of the property." Trial Tr. (May 9, 2012) at 8:5-15.

Dutro was asked about the nature of her interest in the Property. She testified that Steve Saiz and the Bayside Apostolic Center put money down for the purchase of the Property and she took the title in her name. She testified that she took the title with the understanding among them that they would each have a one-third interest in the Property and any profit from the Project.

The bankruptcy court made an oral ruling at the close of trial. It found that although the official records listed Dutro as the title holder of the Property, Dutro "disclosed everything, and there's no reason not to accept what she said." Trial Tr. (May 9, 2012) at 15:1-2. The bankruptcy court found that the Debtors provided sufficient information on their bankruptcy schedules so that anyone could easily investigate the basis of the other partners' interest in the Property. The bankruptcy court noted that the Note was a form that was simply filled out by the parties. It found that while there was a dispute about whether the Note was secured by a deed of trust, it "would [not] base a nondischargeability of this nature [ ] on just that." Id. at 15:5-10. Finally, the bankruptcy court found there was no

-5-

fraud or misrepresentation by the Debtors: "I'm not convinced from the facts before me that it wasn't anything other than described by the Debtor that things went bad for a lot of people, and the Debtor simply couldn't make the payments." Id. at 15:14-18.

On May 17, 2012, the bankruptcy court entered judgment in favor of the Debtors.[3] Garcia timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in entering judgment in favor of the Debtors on the Complaint?

## IV. STANDARDS OF REVIEW

We apply the following standards of review to a judgment on an objection to discharge: (1) the bankruptcy court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing Searles

---

[3] At the trial and in its judgment on Garcia's Complaint, the bankruptcy court referenced § 727 and § 523. However, according to the bankruptcy court docket, Garcia did not file a separate complaint alleging § 523 claims for relief. Garcia also did not reference § 523 in his Complaint.

-6-

v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 Fed. Appx. 589 (9th Cir. 2006)).

A factual finding is clearly erroneous if it is "illogical, implausible, or without support in the record." Id. at 1196 (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009)(en banc)).

## V. DISCUSSION

A denial of a discharge is an act that must not be taken lightly. Consequently, § 727 must be construed liberally in favor of the debtor and against the objector. Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986)). However, the opportunity for a fresh start is available only to the "honest but unfortunate debtor." Merena v. Merena (In re Merena), 413 B.R. 792, 807 (Bankr. D. Mont. 2009) (citing Grogan v. Garner, 498 U.S. 279, 286-87 (1990)). Therefore, a party objecting to a debtor's discharge must prove by a preponderance of the evidence that the debtor's actions or conduct fall within one of the exceptions to discharge set forth in § 727. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167, 1168 (9th Cir. 2009).

Garcia's sole contention at the trial and on appeal is that the Debtors made a false oath on their bankruptcy schedules because they disclosed only a one-third interest in the Property, when the title records showed Dutro was the only title holder of the Property. On appeal, Garcia contends that there was "no documentary evidence whatsoever [ ] presented by Debtors or on

-7-

their behalf which would rebut the 'prima Facie evidence' presumption that their ownership was anything other than what is shown by the official title records."  Therefore, Garcia argues that the bankruptcy court erred in finding that the Debtors did not make a material omission on their bankruptcy schedules requiring a denial of their discharge.

The Bankruptcy Code provides that a chapter 7 debtor shall be granted a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  The "fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations."  In re Retz, 606 F.3d at 1196 (citing Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999)).  To succeed on a § 727(a)(4)(A) claim, the objecting party must demonstrate that: (1) a false oath or statement was made by the debtor; (2) knowingly and fraudulently; (3) which was material to the course of the bankruptcy proceedings.  Id.; In re Roberts, 331 B.R. at 882.

A false oath or statement is made when it occurs in the debtor's schedules or at an examination during the course of the proceedings.  In re Roberts, 331 B.R. at 882.  A debtor's bankruptcy schedules must be verified or contain an unsworn declaration under penalty of perjury.  28 U.S.C. § 1746; Rule 1008.  Accordingly, a false statement or omission in a debtor's schedules is a false oath under § 727(a)(4)(A).

-8-

The bankruptcy court found that the Debtors did not fail to disclose their interest in the Property. The bankruptcy court found that although the official documents revealed that Dutro was the title holder, the Debtors disclosed in their schedules that Dutro held a one-third interest in the Property as it was purchased with Steve Saiz and the Bayside Apostolic Center. It found that the Debtors' disclosure regarding the Property in their schedules provided the Trustee and creditors with sufficient information to further investigate the ownership interests if there were any questions. Moreover, it found that "there's no reason not to accept what she said" about co-owning it with her partners, and intending to repay Garcia and complete the Project. Trial Tr. (May 9, 2012) at 15:1-2.

Findings of fact based on credibility are given particular deference on appeal. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985); Arab Monetary Fund v. Hashim (In re Hashim), 379 B.R. 912, 924-25 (9th Cir. BAP 2007). Nevertheless, the record supports both contentions: that Dutro wholly owned the Property or that Dutro owned only a one-third interest. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." Anderson, 470 U.S. at 574. Consequently, we cannot conclude that the bankruptcy court's finding that the Debtors had a one-third ownership interest in the Property was clearly erroneous. As a result, the bankruptcy court did not err in finding that the Debtors did not make a material omission on their schedules.

Because Garcia did not establish the elements necessary to prevail on his § 727(a)(4) claim, we agree with the bankruptcy

-9-

court's conclusion that the Debtors were entitled to judgment on the Complaint.

## VI.  CONCLUSION

For the foregoing reasons, we AFFIRM.