**IN RE: KNOW WEIGH, L.L.C.,**
**Former Debtor.**

**Brookview Apartments, L.L.C., Mike Hoer, & Laurie Hoer Plaintiffs,**

**v.**

**Bronson Family Trust,**
**et. al. Defendants.**

**Case No.: 1:13–bk–12439–MB**
**Adv. Proc. No.: 1:15–ap–01009–MB**

United States Bankruptcy Court,
C.D. California,
SAN FERNANDO VALLEY DIVISION.

Signed August 31, 2017

Brian M. Rothschild, Parsons Behle & Latimer, Salt Lake City, UT, for Plaintiffs.

Lloyd K. Chapman, Law Office of Lloyd K. Chapman, Jeff Katofsky, Sherman Oaks, CA, Illyssa I. Fogel, Los Angeles, CA, Gary Salomons, Encino, CA, for Defendants.

## OPINION

Martin R. Barash, United States Bankruptcy Judge

## I. INTRODUCTION

Two related motions are pending before the Court in this adversary proceeding. The first is Defendants' *Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1), (5) and (6) and 11 U.S.C. §§ 544, 548* (the "Motion To Dismiss"), filed by the Bronson Family Trust, David Bronson, Nancy Bronson, and Joslyn Bronson (collectively, the "Defendants"). Adv. Dkt. 175. The other is the Plaintiffs' *Motion For Authorization Nunc Pro Tunc To Pursue Estate Claims To The Extent Further Authorization Is Required* (the "Authorization Motion") filed by Brookview Apartments, L.L.C., Mike Hoer, and Laurie Hoer (collectively, the "Plaintiffs"). Adv. Dkt. 192.

Defendants argue that the complaint in this adversary proceeding (the "Complaint") should be dismissed because: (i) the Court does not have jurisdiction over the avoidance claims asserted pursuant to the Bankruptcy Code following dismissal of the underlying chapter 11 bankruptcy case, (ii) the Court should not exercise its discretion to retain jurisdiction over the complaint following dismissal of the underlying bankruptcy case, (iii) Plaintiffs do not have standing to pursue the avoidance claims asserted in the Complaint under the Bankruptcy Code because none of the Plaintiffs is a trustee or debtor in possession, (iv) Plaintiffs do not have standing to pursue bankruptcy avoidance claims because Plaintiffs did not previously seek or obtain the authority of the Court to pursue those claims, (v) Plaintiffs do not have standing to pursue bankruptcy avoidance claims because the bankruptcy estate no longer exists and cannot benefit from any recovery, (vi) Plaintiffs' allegations fail to state a claim upon which relief can be granted, (vii) the Court cannot or should not exercise supplemental jurisdiction over Plaintiffs' state law fraudulent transfer claims, and (viii) Plaintiffs' avoidance claims asserted under Utah's version of the Uniform Fraudulent Transfer Act do not state claims upon which relief can be granted because Utah law does not apply. Defendants also suggest in the title of their Motion to Dismiss that they seek dismissal based on defective service.

The Plaintiffs oppose the Motion to Dismiss and disagree with all of the Defendants' myriad arguments—including Defendants' argument that Plaintiffs failed to seek or obtain an order of the Court authorizing them to assert avoidance claims pursuant to the Bankruptcy Code. Nevertheless, Plaintiffs have filed the Authorization Motion seeking an order of the Court, *nunc pro tunc* to the time the complaint was filed, expressly granting Plaintiffs standing to pursue those claims. Defen-

dants oppose this request, arguing that the request comes too late, that the Court does not have jurisdiction over it, and that granting such relief would unduly prejudice their rights.

After multiple rounds of briefing and oral argument, the Motion to Dismiss and Authorization Motion are ripe for decision. For the reasons set forth in this Memorandum of Decision, the Court **DENIES** the Motion to Dismiss and **GRANTS** the Authorization Motion. This Memorandum of Decision constitutes the Court's findings and conclusions for purposes of Federal Rule of Bankruptcy Procedure 7052.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Know Weigh, L.L.C. (the "Debtor") is a California limited liability company formed in 2007. One of its members is defendant Bronson Family Trust, which holds a 35.75 percent ownership interest. Complaint at ¶¶ 8, 14. Shortly after formation, in June 2007, the Debtor purchased Plaintiffs' ownership interest in a multi-unit residential property located in Provo, Utah (the "Property"). At the time of sale, the Property was encumbered by a mortgage in favor of Wells Fargo Bank. *Id.* at ¶ 18.

The transaction was seller financed; Plaintiffs took an interest-bearing promissory note in their favor, dated June 28, 2007, in the amount of $1 million (the "Note," collectively with the other security documents, the "Security Documents"). *Id.* at ¶ 17. The Security Documents provided that the Note would mature with a balloon payment on April 1, 2013, and was to be secured by the Property, second only to Wells Fargo Bank. *Id.* at ¶ 18. Plaintiffs allege, however, that the Debtor insisted that the deed of trust not be recorded unless and until an event of a default occurred. *Id.*

The Plaintiffs allege that the Security Documents allowed the Debtor to perpetrate a scheme by deferring payments for years, while further encumbering the Property with mortgages to insiders, thereafter selling the Property, dissipating the proceeds to those same insiders, but all the while maintaining the impression that Plaintiffs had "secured status" as a second position lender. *Id.* at ¶ 18.

The Debtor deferred interest payments to Plaintiffs under the Note for two years after the sale. *Id.* at ¶ 19. Following the two-year deferral period, the Debtor made three late payments to Plaintiffs and then stopped making payments, allegedly relying on a condition in the Security Documents, allowing for certain payments be "avoided" if the Debtor maintained a "debt coverage ratio" of less than 1.20. *Id.*

Meanwhile, the Debtor allegedly encumbered the Property in favor of two affiliates owned in whole or in part, and controlled by, the managing member of the Debtor, Jeff Katofsky (respectively, the "Affiliates" and "Katofsky"). *Id.* at ¶ 20. Regarding these additional encumbrances, the Plaintiffs allege that: (i) no value was given to the Debtor; (ii) any claimed security interest in the Property never attached; (iii) and any claimed security interest in the Property was not validly perfected. *Id.* at ¶ 21.

On or about March 30, 2012, the Debtor sold the Property to a third party for approximately $1,865,000, and used $665,000 of the sale proceeds to pay off the first mortgage to Wells Fargo. *Id.* at ¶ 22. The Debtor allegedly disbursed an aggregate of $557,500 to the Affiliates in order to satisfy their encumbrances. *Id.* at ¶ 23. Plaintiffs allege the Debtor never informed them about the sale, the existence of additional encumbrances against the Property, or the distribution of the sale proceeds. *Id.* at ¶¶ 23, 32.

After satisfying sale expenses and making the foregoing distributions, the Debtor allegedly was left with approximately $411,230 in cash from the sale of the Property and no other assets. *Id.* at ¶ 24. The Debtor allegedly distributed $224,800 of those funds to the Bronson Family Trust by way of a check dated April 1, 2012, drawn on the Debtor's bank account. (the "Transfer"). *Id.* at ¶¶ 25, 26, Exh. A. The check allegedly was endorsed by and deposited into the personal account of defendants David and Nancy Bronson. *Id.* at 25, Ex. A.

Plaintiffs allege that the Debtor was insolvent immediately prior to the Transfer because it had less than $500,000 in cash, no business operations or income, and a debt to Plaintiffs in excess of $1,000,000. *Id.* at ¶¶ 24, 25, 26 & 28. Plaintiffs further allege that the Debtor was insolvent following the sale of the Property because it could not satisfy its debts as they came due, i.e., the Note. *Id.* at ¶ 29.

Just over a year later, on April 8, 2013 (the "Petition Date"), the Debtor filed its voluntary chapter 11 petition in this Court. Case Dkt. 1 (the "Petition"). According to Katofsky, the filing was precipitated by the default under the Note and the collection demands of Plaintiffs. Case Dkt. 110 at 9 (Decl. of Katofsky in support of Debtor's *Motion for Voluntary Dismissal of the Bankruptcy Case* ). Prior to the Petition Date, the Debtor had used the net proceeds of the sale of the Property to purchase six residential properties in St. Louis, Missouri (the "St. Louis Properties"). Complaint at ¶ 32. As of the Petition Date, these properties constituted the Debtor's sole significant asset. *Id.*

Plaintiffs filed a proof of claim in the Debtor's chapter 11 case for $1,165,355, which constituted more than 94 percent of the total amount of all claims filed in the case (i.e., $1,235,980). *See* Creditor Regis-

ter; *see also* Adv. Dkt. 192 at 3 (uncontroverted summary of claims filed and disposition thereof). After one of the claims was settled for a reduced amount and another withdrawn, the Plaintiffs' claim constituted 99.48% of all claims outstanding in the case. Dkt. 192 at 3. As of the ultimate dismissal of the case (discussed below), the Plaintiffs' proof of claim was the only outstanding claim in the case, constituting 100% of the claims against the Debtor and its estate. *See* Case Dkt. 110 at 4 (Debtor's *Motion to Dismiss Chapter 11 Case* ), and at 9 (Decl. of Katofsky in support thereof).

On or about May 7, 2014, the Debtor entered into a settlement agreement with Plaintiffs and thereafter filed a motion requesting approval of the settlement pursuant to Federal Rule of Bankruptcy Procedure 9019. Case Dkt. 62 (the "Compromise Motion"). The settlement agreement provided in principal part: (i) the Debtor would assign all avoidance actions to Plaintiffs, (ii) the Debtor would market the St. Louis Properties for sale and deliver $400,000 to the Plaintiffs (up to $40,000 of which would come from the Affiliates if need be) no later than January 31, 2015, (iii) the parties would exchange mutual releases, and (iv) the Debtor would use its "best efforts" to obtain entry of an order dismissing the bankruptcy case upon the consummation of its principal terms. If the Debtor was unable to generate adequate proceeds from the sale of the St. Louis Properties to meet its obligations under the agreement, the entire agreement would be void. *See* Case Dkt. 71 at § 2.03. The Court approved the settlement agreement on June 3, 2014. *See* Case Dkt. 71 (the "Order Approving Compromise").

On January 27, 2015, the Debtor moved to sell the St. Louis Properties for less than the amount necessary to perform under its settlement agreement with the Plaintiffs. *See* Case Dkt. 96, 102. The

Debtor was not able to locate a buyer willing to pay that price. *See* Case Dkt. 102. The Plaintiffs objected to the sale motion. *See* Case Dkt. 100, 102. The parties subsequently resolved the dispute by modifying their settlement agreement (as modified, the "Settlement Agreement"). Rather than have the Debtor attempt to sell the St. Louis Properties, the modified Settlement Agreement provided that the Debtor would simply convey its interest in the St. Louis Properties to the Plaintiffs and, with funds provided by its Affiliates, pay the Debtor $50,000. *See* Case Dkt. 102. The modification stipulation was filed on February 16, 2015 and approved by order entered on February 25, 2015 (the "Modification Order"). *See* Case Dkt. 102, 105.[1]

Before and after the modification, the assignment of the Debtor's avoidance action rights was a key component of the Settlement Agreement. These litigation rights were the only remaining estate assets of potentially significant value other than the St. Louis Properties, Plaintiffs were the only significant creditors of the estate, and the Debtor was not willing to pursue lawsuits against the Bronson Family Trust, with which Katofsky, managing member of the Debtor, had a longstanding business relationship. *See* Adv. Dkt. 198 at 2–3 (Decl. of Brian M. Rothschild); Adv. Dkt. 228 at 2–3 (Reply in Support of Plaintiff's Authorization Motion). Indeed, prior to the original settlement, the Plaintiffs had demanded and the Debtor had rejected a request that the Debtor bring suit. *Id.*

The assignment provision, Section 2.06 of the Settlement Agreement, provides in relevant part:

Debtor will and hereby does assign to [Plaintiffs], all of its right, title, and interest, in any and all causes of action it may have against [the] Bronson [Family Trust], including, without limitation, any and all causes of action it may have under any state uniform fraudulent transfer law or under the Bankruptcy Code, or otherwise (the "Assigned Claims").

Case. Dkt. 62 at 14.

The Settlement Agreement further specifies how any proceeds for the Assigned Claims would be held pending consummation of the Settlement Agreement. Specifically, "until it is determined whether this agreement will be finally consummated," any such proceeds were to be deposited with the Court. *Id.* Upon consummation of the agreement, those proceeds were to be:

transferred immediately to [Plaintiffs] and shall be property of [Plaintiffs] free and clear of any claims of all other Parties or their Related Parties, and all costs and attorney's fees incurred or expended from this assignment and prosecution of claims against Bronson Family Trust are to be borne solely by [Plaintiffs].

*Id.* Following consummation, the Settlement Agreement provides that the Debtor will move to dismiss the case. *See* Case Dkt. 62 at 15 (§ 2.09).

The Settlement Agreement does *not* expressly state that: (i) Plaintiffs are being granted the "standing" or "authority" of the debtor in possession to pursue estate causes of action arising from the Bankruptcy Code, or (ii) what forum, if any, the assigned causes of action must be filed in. Neither the Compromise Motion nor the Order Approving Compromise expressly address these matters either. The Compromise Motion requested only that the agreement be approved. The Order Approving Compromise simply states: "the Debtor is authorized to enter into and

---

1. The Defendants are not parties to the Settlement Agreement.

consummate [the agreement]." Case Dkt. 71.

Plaintiffs commenced this adversary proceeding on February 2, 2015 (Adv. Dkt. 1) by filing the Complaint in this Court. At the time they filed the Complaint, the Debtor's motion to sell the St. Louis Properties was pending—meaning that the original settlement agreement had been approved but not yet modified, and the bankruptcy case was still pending. The Complaint alleges the following seven causes of action against Defendants:

1. Fraudulent Transfer under 11 U.S.C. § 548(a)(*l*)(A) (*Compl.* ¶ 39–47);
2. Constructive Fraudulent Transfer (11 U.S.C. § 548(a)(*l*)(B) (*Id.* ¶ 48–55));
3. Avoidance of Fraudulent Transfers under 11 U.S.C. § 544 & Utah UFTA (Utah Code 4 Ann. Sec. 25–6–5 (*Id.* ¶ 56–61));[2]
4. Avoidance of Fraudulent Transfers under 11 U.S.C. § 544 & Utah UFTA (Utah Code 6 Ann. Sec. 25–6–6 (*Id.* ¶ 62–66));
5. Remedies under the Utah Fraudulent Transfer Act (Utah Code Ann. Sec. 25–6–8 and 11 U.S.C. § 544 (*Id.*, ¶ 67–69));
6. Recovery of Property under 11 U.S.C. §§ 550(a), 544, 547, & 548 if transfers are found to be fraudulent under the Utah UFTA and "other applicable law" (*Id.* ¶ 70–75).
7. Recharacterization (*Id.* ¶ 76–83).

On March 19, 2015, Defendants, specially appearing, moved to dismiss the Complaint for lack of subject matter jurisdiction under *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). Adv. Dkt. 5. In response, Plaintiffs filed a *Motion to Withdraw Reference of the Adversary Proceeding* in the District Court on March 26, 2015. Adv. Dkt. 11 (the "Withdrawal Motion"). This Court held a status conference on May 14, 2015, and stayed the adversary proceeding pending an adjudication of the Withdrawal Motion. The Court also denied Defendants' request to issue a decision on the initial motion to dismiss and continued the status conference to August 12, 2015.

Around this time, on April 21, 2015, the Debtor moved to dismiss the bankruptcy case. Plaintiffs did not oppose dismissal of the bankruptcy case. At that time, they had received title to the St. Louis Properties and the $50,000 settlement payment, they had commenced this adversary proceeding, and they had filed the Withdrawal Motion seeking to move the litigation to the District Court. Without objection, the Debtor's bankruptcy was dismissed on May 18, 2015. Case Dkt. 114 (the "Dismissal Order"). The Dismissal Order provides that several orders, including the Order Approving Compromise, would remain in effect following the dismissal of the case.

At a hearing held August 12, 2015, the Court dismissed this adversary proceeding *sua sponte* for lack of subject matter jurisdiction. Two days later, the Withdrawal Motion was denied by the District Court on August 14, 2015. *See* Adv. Dkt. 191 (noting that the "Bankruptcy Court's expertise in title 11's provisions on fraudulent transfers would certainly be helpful in the case at hand and could help minimize

---

**2.** The Court finds that Counts 3, 4, 5, 6 and 7 are pled broadly enough to encompass two alternative theories. First, they assert the hypothetical powers of a bankruptcy trustee under Bankruptcy Code section 544 to avoid and recover transfers under applicable state law. *See* 11 U.S.C. 544(b)(1). Second, they assert the direct power of an unsecured creditor to avoid and recover transfers under applicable state law. *See, e.g., Arab Monetary Fund v. Hashim (In re Hashim)*, 379 B.R. 912, 920 (9th Cir. BAP 2007).

the potential for error in the event the District Court must ultimately review the matter").

Plaintiffs filed a motion to reconsider the Court's dismissal based on lack of jurisdiction, citing the District Court's denial of the Withdrawal Motion and Plaintiffs' surprise and unpreparedness for the Court's jurisdictional arguments on August 12, 2015. *See* Adv. Dkt. 20 (the "Motion to Reconsider"). The Motion to Reconsider was granted and an order vacating the dismissal was entered on December 31, 2015.

Following reinstatement of the adversary proceeding, however, Defendants failed to respond to the Complaint. Plaintiffs requested entry of defaults and a default judgment. *See* Adv. Dkt. 57 & 62 (respectively). Although defaults were entered, see Adv. Dkt. 71–74, and an initial hearing held on Plaintiff's motion for a default judgment, see Adv. Dkt. 85, the Court ultimately set aside the defaults, at the request of the Defendants, pursuant to an order entered on August 15, 2016. *See* Adv. Dkt. 171.

On August 16, 2016, Defendants filed the Motion to Dismiss. On September 8, 2016, in response, Plaintiffs filed their opposition to the Motion to Dismiss, Adv. Dkt. 193, and the Authorization Motion, Adv. Dkt. 192. The Court held hearings on these motions on October 14, 2016, December 15, 2016, January 30, 2017 and June 8, 2017.

## III. LEGAL ANALYSIS

### A. Subject Matter Jurisdiction

The Defendants argue the Court should dismiss this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 12(b)(1) because the Court lacks subject matter jurisdiction. Specifically, Defendants argue (i) the Court never had subject matter jurisdiction over this adversary proceeding, (ii) if it had subject matter jurisdiction over the proceeding, it lost such jurisdiction at the time the bankruptcy case was dismissed, and (iii) the Court cannot have jurisdiction over the case because Plaintiffs lack standing. The Court rejects these arguments. The Court had subject matter jurisdiction at the time the Complaint was filed and may properly retain jurisdiction following dismissal of the underlying bankruptcy case. Moreover, for purposes of establishing subject matter jurisdiction, the Plaintiffs have constitutional standing to pursue the Complaint.

### 1. Jurisdiction at Commencement of Adversary Proceeding.

Subject matter jurisdiction is measured at the time a complaint is filed. *See Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570–71, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004); *Dole Food Co. v. Patrickson,* 538 U.S. 468, 478, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003); *In re Fietz,* 852 F.2d 455, 457 fn. 2 (9th Cir. 1988); *Linkway Inv. Co. v. Olsen (In re Casamont Investors),* 196 B.R. 517, 521 (9th Cir. BAP 1996). A plaintiff that invokes the jurisdiction of the court bears the burden of establishing the court's subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 376–378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The Plaintiffs have met that burden.

Bankruptcy courts are units of the district courts, and its judges are judicial officers of the district courts. *See* 28 U.S.C. § 151. District courts may refer all bankruptcy cases and proceedings to the bankruptcy court—and in this district has done so. *See* 28 U.S.C. § 157(a); Cent. Dist. Cal. General Order No. 13-05.

As such, this Court has jurisdiction over all civil proceedings (1) "arising under

title 11," i.e., any proceedings to enforce rights created by the Bankruptcy Code, (2) "arising in" a bankruptcy case, i.e., other proceedings that would not exist outside a bankruptcy case, such as case administration, or (3) "related to" a bankruptcy case, i.e., any proceedings the outcome of which could "conceivably" have any effect on the bankruptcy estate. *See* 28 U.S.C. § 1334(b); *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009); *In re Marshall*, 600 F.3d 1037, 1054 (9th Cir. 2010); *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting "related to" test of *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984)).

### a. "Arising Under" Jurisdiction

■ A proceeding "arises under" title 11 if it involves a "cause of action created or determined by a statutory provision of title 11." *See In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995). Here, six of the seven claims in the Complaint are premised on statutory provisions of the Bankruptcy Code. Count 1 and Count 2 seek the avoidance of prepetition transfers pursuant to Bankruptcy Code section 548. Count 3, Count 4 and Count 5 assert the rights of a trustee or debtor in possession in bankruptcy under Bankruptcy Code section 544(b) to seek avoidance of prepetition transfers under state law. Count 6 seeks the recovery of avoided transfers under Bankruptcy Code section 550.

Count 7 of the Complaint does not rely on the Bankruptcy Code, but is potentially integral to Bankruptcy Code causes of action that are asserted in the Complaint. Count 7 seeks to recharacterize payments allegedly paid by the Defendants to the Debtor as an equity investment rather than a loan, in order to show that the Debtor did not receive reasonably equivalent value (which is an element of a constructively fraudulent transfer). *See* 11 U.S.C. § 548(a)(1)(B). As Defendants ac-

knowledge, recharacterization is not so much an independent cause of action. Adv. Dkt. 175 at 9. It is the equitable power to determine whether a particular transfer gave rise to a debt or an equity investment. In the Ninth Circuit, courts apply this power in the context of bankruptcy matters in accordance with applicable state law. *See In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1148 (9th Cir. 2013). Thus, to the extent Plaintiffs seek recharacterization in order to establish one or more elements of a claim under the Bankruptcy Code, the Court has "arising under" jurisdiction to make that determination.

At the time the Complaint was filed, the Court had "arising under" jurisdiction over Counts 1 through 7 of the Complaint.

### b. "Arising In" Jurisdiction

■ A civil proceeding "arises in" a title 11 case when it is not created or determined by the Bankruptcy Code, but where it would have no existence outside of a bankruptcy case. *In re Harris*, 590 F.3d at 737. Based on the Court's conclusion that Counts 1 through 6 are created or determined by provisions of the Bankruptcy Code, the Court concludes that these claims are not subject to the Court's "arising in" jurisdiction.

■ The Court reaches the same conclusion as to Count 7. Recharacterization does not arise under the Bankruptcy Code, and its application is not exclusive to bankruptcy cases. Although it has been applied in the bankruptcy context, recharacterization is a power also recognized in federal tax cases and state law cases. *See, e.g., John Hancock Life Ins. Co. (U.S.A.) v. Comm'r*, 141 T.C. 1, 147–48 (T.C. Aug. 5, 2013); *Yankee Microwave, Inc. v. Petricca Communs. Sys.*, 53 Mass. App. Ct. 497, 522, 760 N.E.2d 739 (Mass. App. Ct. Jan. 7, 2002). The doctrine has existence outside of bankruptcy and therefore does not "arise in" this case, within the meaning of

the bankruptcy jurisdiction statute, 28 U.S.C. § 1334(b).

At the time the Complaint was filed, the Court did not have "arising in" jurisdiction over Counts 1 through 7 of the Complaint.

### c. "Related to" Jurisdiction

■ "An action is 'related to' a bankruptcy case if the outcome of the proceeding could conceivably alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) in such a way as to impact on the administration of the bankruptcy estate." *In re Casamont Inv'rs*, 196 B.R. at 521 (citing *In re Fietz*, 852 F.2d at 457). Defendants argue the Complaint could not conceivably "alter the Debtor's rights" at the time it was filed because the approved Settlement Agreement (i) contemplated dismissal of the Debtor's bankruptcy case and (ii) provided that the Plaintiffs would retain all sums recovered. Adv. Dkt. 175 at 12–13.

■ The Defendants' arguments fail for several reasons. First, Defendants elide over the issue of "arising under" jurisdiction, suggesting that if this Court does not have "related to" jurisdiction it does not have *any* subject matter jurisdiction. This is simply incorrect. Regardless of whether the Court had "related to" jurisdiction over the Complaint at the time it was filed, the Court had "arising under" jurisdiction. It was not necessary for the Court to have more than one basis to assert jurisdiction over the claims. The case authority principally relied on by Defendants to support their argument, *In re Casamont Investors*, 196 B.R. 517, dealt only with the existence of "related to" jurisdiction at the commencement of an adversary proceeding. That case did not involve alternative bases for bankruptcy jurisdiction. *Id.* at 521.

■ Second, even if the Court did not have "arising under" jurisdiction, the Court had "related to" jurisdiction at the time the Complaint was filed because the outcome of the litigation might conceivably have an impact on the Debtor and its estate. At the time the Complaint was filed, the original settlement agreement had been approved but not yet modified. The original agreement contemplated dismissal of the chapter 11 case and the transfer of all litigation recoveries to the Plaintiffs, *if* the agreement was fully consummated. Case. Dkt. 62 at § 2.09. But that was by no means a certainty. Prior to the Debtor moving for dismissal, it was contemplated (among other things) that the St. Louis Properties would be sold at a price sufficient to generate at least $360,000 and that such funds would actually be transferred to Plaintiffs, along with up to $40,000 in contributions from the Affiliates. Case. Dkt. 62 at §§ 2.03, 2.05, 2.09. Furthermore, if the payment was not made by February 28, 2015, the agreement would become null and void.

The uncertainty around consummation of the settlement is reflected in those provisions of the agreement specifying what would happen to any funds generated from the claims assigned to Plaintiffs, which are alleged in the Complaint:

> Any proceeds, by way of settlement, Judgment, or otherwise, recovered, if any, by Brookview from Bronson shall be deposited with the United States Bankruptcy Court until it is determined whether this Agreement will be finally consummated. If this Agreement becomes void under Section 2.03, such proceeds shall be held in escrow for the benefit of all creditors, and Brookview will retain the right to seek compensation for its fees and costs.

Case. Dkt. 62 at § 2.06. If the settlement fell apart—which was a possibility—any recoveries on the assigned claims would become assets of the estate, potentially

impacting the distributions available to creditors, and the options available to the Debtor and/or other parties in interest for disposing of the bankruptcy case.[3]

Weeks after the Complaint was filed, the Plaintiffs and the Debtor did agree to modify the settlement agreement. The parties replaced the provision requiring debtors to sell the St. Louis Properties for a specified strike price with a provision requiring the Debtor simply to deliver title to these properties to the Plaintiffs. This modification undoubtedly made it more likely that the agreement would be consummated and the case dismissed. But the modification did not alter the fact that, *at the time the Complaint was filed*, it was far from certain whether the settlement would be consummated and the case dismissed.[4] As such, at the time the Complaint was filed, the claims alleged in the Complaint conceivably could have an impact on the estate and the administration of the bankruptcy case.

Defendants rely heavily on events that took place *after* the Complaint was filed to contend that "related to" jurisdiction does not exist. They argue, for instance, that the Settlement Agreement was ultimately consummated, that the underlying bankruptcy case was dismissed without opposition, that there is no longer a debtor in possession to be impacted by the litigation, and there is no longer an estate. These arguments, however, ignore the rule that jurisdiction is tested in the first instance at the time the Complaint is filed, as recognized in *Grupo Dataflux v. Atlas Global Group, L.P.*, *Dole Food Co. v. Patrickson*, *In re Fietz*, and *In re Casamont Investors*. As discussed in the following section, the retention of jurisdiction over an adversary proceeding following dismissal of the underlying bankruptcy case may or may not be appropriate, but that is a separate and distinct analytical question.

At the time the Complaint was filed, the Court had "related to" jurisdiction over Counts 1 through 7 of the Complaint.

## 2. Retention of Jurisdiction Following Dismissal of Bankruptcy Case

██ When causes of action are "related to" a bankruptcy case at the time they are filed, and the bankruptcy case is subsequently dismissed, the bankruptcy court does not necessarily lose jurisdiction over those causes of action. *In re Carraher*, 971 F.2d 327, 328 (9th Cir. 1992); *In re Casamont Inv'rs*, 196 B.R. at 521–22.

██ A bankruptcy court may exercise its discretion to retain jurisdiction over "related to" claims after dismissal of the underlying bankruptcy case, upon consideration of the following four factors: (i) judicial economy, requiring consideration of efficiency of judicial resources; (ii) convenience, requiring consideration of the parties' litigation efforts and access to alternative forums; (iii) fairness, requiring consideration of the equity and circumstances of a particular case; and (iv) comity, requiring consideration of whether the state laws involved are complex such that they ought to be construed and applied by state trial courts and reviewed by state

---

3. Relying on a case under the former Bankruptcy Act, *Baker & Taylor Drilling Co. v. Stafford*, 369 F.2d 551, 556 (9th Cir. 1966), the Defendants argue that generally the bankruptcy court does not have jurisdiction over controversies between third parties not involving the debtor or property of the estate. This argument ignores the fact that, at the time the Complaint was filed, the estate retained an interest in any recoveries from the assigned claims alleged under the Complaint. Thus, on its face, *Baker & Taylor Drilling Co. v. Stafford* is inapposite.

4. Indeed, subsequent events demonstrate that the settlement agreement—as originally proposed and approved—was not consummated.

appellate courts. *See In re Carraher*, 971 F.2d at 328; *In re Casamont Inv'rs*, 196 B.R. at 521.

In adopting this standard, the Ninth Circuit and the Bankruptcy Appellate Panel have analogized to well-established law addressing a federal court's ability to retain supplemental jurisdiction over state law claims following dismissal of all federal claims. *See In re Casamont Inv'rs*, 196 B.R. at 521 (discussing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) and *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

▆▆▆ As discussed above, the Court has both "arising under" and "related to" jurisdiction over this adversary proceeding. Dismissal of the bankruptcy case did not alter the Court's "arising under" jurisdiction based on the assertion of claims under the Bankruptcy Code. Such jurisdiction is based on the statutory source of the cause of action, not the pendency of a bankruptcy case. Irrespective, to the extent the causes of action asserted in the Complaint are "related to" the Debtor's now-dismissed bankruptcy case, the Court exercises its discretion to retain jurisdiction over those claims.

**Judicial economy:** This adversary proceeding has been pending for two years and the Court has invested substantial resources in this case. The parties have litigated extensively the effect of the Debtor's Settlement Agreement and the orders approving it, the rights of Plaintiffs to assert those causes of action, and numerous discovery issues. The Court is very familiar with the case, the allegations, its prior rulings and the course of dealing between the parties during the pendency of the litigation. The Court also is familiar with the underlying bankruptcy case and the bankruptcy that are issues raised by the Complaint—a point relied upon by the District Court in its decision to deny the Withdrawal Motion. Any other court would be starting from scratch and would not have the knowledge developed by this Court.

**Convenience:** Declining jurisdiction over the Complaint would be an inconvenience to the parties at this point. This is the forum in which Plaintiffs asserted their rights as creditors against the Debtor and negotiated the Settlement Agreement authorizing them to pursue the Debtor's claims against the Defendants. The Defendants have appeared here through counsel in Southern California and have litigated the case for two years. If the Court were to dismiss the Complaint at this point, both sides would have to expend considerable resources starting the litigation over in another forum.

**Fairness:** Having to start over in another forum would be unfair. Based on the amount of pre-trial litigation that has occurred to date in this case, the Court anticipates that there would be substantial pre-trial litigation in any other forum, further delaying the adjudication of the Plaintiffs' claims. That delay would unfairly prejudice both parties. Further, to the extent Defendants were to assert defenses in another, non-bankruptcy forum based on bankruptcy law or matters that occurred during pendency of the bankruptcy case, the Plaintiffs would be placed at an unfair disadvantage. This Court is qualified to sort out all of the bankruptcy and non-bankruptcy issues raised by the Complaint and render a ruling that is fair to all parties.

**Comity:** To the extent the Complaint implicates issues of state law—i.e., causes of action for fraudulent transfer—the issues are not complex and well within the Court's expertise. Bankruptcy courts frequently consider causes of action for inten-

tional and constructive fraudulent transfer under state law. These are among the most often litigated issues in bankruptcy court. As a result, concerns regarding comity in favor of state courts are not a factor here and do not weigh against the retention of jurisdiction.

To the extent the Court's jurisdiction at the inception of the lawsuit was based on "related to" bankruptcy jurisdiction, the foregoing factors all weigh in favor of the Court retaining jurisdiction over the Complaint notwithstanding dismissal of the underlying bankruptcy case.[5] Furthermore, for the very same reasons, the Court finds that if all of the claims based on the Bankruptcy Code were dismissed, and Plaintiffs were limited to proceeding on Counts 3, 4, 5, 6 and 7 exclusively under state law, it would be appropriate for the Court to retain jurisdiction over these non-federal claims.

### 3. Constitutional Standing

■ The Motion to Dismiss broadly attacks Plaintiffs "standing" to assert the causes of action set forth in the Complaint. The concept of standing "'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The constitutional standing limitations are jurisdictional. *Id.* Accordingly, the Court will consider the issue of "constitutional standing" before concluding its discussion of jurisdiction over the Complaint.[6]

■ Constitutional standing concerns whether the plaintiff's personal stake in the lawsuit is sufficient to make out a concrete "case" or "controversy" to which the federal judicial power may extend under Article III, § 2. *Id.* To have constitutional standing, a plaintiff must show injury in fact, causation of that injury by the defendant's conduct, and redressability of the injury by the requested relief. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *In re Godon, Inc.*, 275 B.R. 555, 564 (Bankr. E.D. Cal. 2002). In the bankruptcy context, when a creditor has a pecuniary interest in the outcome of estate litigation a creditor has shown sufficient injury in fact, causation, and redressability sufficient to show constitutional standing. *See In re Hashim*, 379 B.R. 912, 920 (9th Cir. BAP 2007) (creditor had constitutional standing where it would be the pecuniary beneficiary of a successful avoidance action and would be adversely affected by a lapse of the ability to obtain such a recovery).

■ Here, Plaintiffs were the largest and ultimately the only remaining creditors of the Debtor's estate. They alleged that they were harmed by the Transfer and have a pecuniary interest in the outcome of their claims seeking to avoid and recover the Transfer. As such, as a constitutional matter, the Plaintiffs have standing to bring the causes of action asserted in the Complaint and the Court may properly exercise subject matter jurisdiction over those causes of action.

### 4. Conclusion.

The Court concludes: (i) it had subject matter jurisdiction over the Complaint at

---

**5.** To the extent Count 7 is integral to the determination of the other causes of action, the Court finds it has "related to" jurisdiction over it, regardless of whether it constitutes an independent claim for relief.

**6.** The Court considers issues pertaining to prudential standing in Section III.B.1 below.

the time it was filed, (ii) the Court's retention of jurisdiction following dismissal of the underlying bankruptcy case is proper, and (iii) the Plaintiffs have the requisite constitutional standing to confer subject matter jurisdiction on this Court. For these reasons, the Defendants' request to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) will be denied.

## B.  Failure to State a Claim

The Defendants argue that the Court should dismiss this adversary pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 7012, for failure to state claims upon which relief can be granted. A motion under Rule 12(b)(6) tests the legal sufficiency of the claims stated in a complaint. "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

In resolving a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, and accept all well-pleaded factual allegations as true. *Johnson*, 534 F.3d at 1122; *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001). In considering a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (citations omitted).

The Defendants request that the Court dismiss the Complaint under Rule 12(b)(6) arguing: (i) Plaintiffs lack of standing to assert any of the avoidance actions are based on the Bankruptcy Code; (ii) the Complaint fails to plead facts adequate to sustain the alleged bankruptcy avoidance claims; and (iii) the Complaint improperly relies on Utah law with respect to those claims based in whole or in part on applicable state law.

### 1.  Prudential Standing.

■ Defendants' argument that Plaintiffs may not pursue bankruptcy avoidance action raises issues of prudential standing, rather than constitutional standing. "The prudential doctrine of standing has come to encompass 'several judicially self-imposed limits on the exercise of federal jurisdiction.'" *United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 551, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Principles of prudential standing are not "ordained by the Constitution, but constitute rather 'rule(s) of practice,' albeit weighty ones; hence some exceptions to them where there are weighty countervailing policies have been and are recognized." *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) (alteration in original) (citation omitted) (quoting *Barrows v. Jackson*, 346 U.S. 249, 257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953)); *see also Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000).

■ A dismissal for lack of prudential standing is effectively the same as a dismissal for failure to state a claim. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067–1068 (9th Cir. 2011); *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) (citing *Lanfear v. Home*

*Depot, Inc.*, 536 F.3d 1217, 1221–22 (11th Cir. 2008), and *Harzewski v. Guidant Corp.*, 489 F.3d 799, 803–04 (7th Cir. 2007)).

The Defendants argue that prudential standing is lacking here because: (a) the Bankruptcy Code does not authorize anyone other than a trustee to prosecute such actions, (b) Plaintiffs are pursuing these causes of action for their personal benefit rather than the benefit of a bankruptcy estate, and (c) Plaintiffs did not seek or obtain an order of the Court granting them "derivative" standing to pursue those causes of action, i.e., prudential standing that is derivative of the powers of a trustee or debtor in possession.[7] The Defendants also argue that Plaintiffs do not have standing to assert bankruptcy causes of action against the individual Defendants named in the Complaint because the assignment of the Debtor's rights under the Settlement Agreement does not name those individuals. Each of these arguments is addressed below.

### a. Assigned Bankruptcy Avoidance Claims

▮ Avoidance claims under the Bankruptcy Code empower a trustee in bankruptcy to avoid and recover, for the benefit of the estate, transfers of property by a debtor.[8] A chapter 11 debtor in possession is vested with certain rights, powers and duties of a trustee, including the power to bring avoidance actions. 11 U.S.C. § 1107(a). Creditors in a bankruptcy case typically are not vested with these powers. *See In re Curry & Sorensen, Inc.*, 57 B.R. 824, 827 (9th Cir. BAP 1986). However, "[i]t is well settled that in appropriate situations the bankruptcy court may allow a party other than the trustee or debtor-in-possession to pursue the estate's litigation." *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899, 903 (9th Cir. BAP 1997).

▮ The Defendants contend that this is not an appropriate situation. Although the Settlement Agreement purports to assign to the Plaintiffs the bankruptcy avoidance actions held by the Debtor, the Plaintiffs argue that the statutes creating those causes of action authorize only a trustee or debtor in possession to pursue them.[9] This argument, however, is contrary to established Ninth Circuit law. Specifically, the Ninth Circuit Court of Appeals has held that a trustee or debtor in possession—outside of a plan of reorganization but with judicial approval—may sell or transfer its avoidance powers to a creditor and effec-

---

7. In their briefs and oral argument, Defendants occasionally characterize these arguments as "jurisdictional." This is incorrect. The only aspect of standing that is jurisdictional is the injury-in-fact analysis under Article III of the Constitution, as discussed in Section III.A.3 above. *See In re Godon*, 275 B.R. 555 at 563–66 (distinguishing constitutional standing issues from prudential standing issues).

8. *See, e.g.*, 11 U.S.C. §§ 544, 548(a), 550.

9. *See* 11 U.S.C. § 544 ("The trustee shall have... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by..."); 11 U.S.C. § 548(a) ("The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if...."); 11 U.S.C. § 550 ("to the extent a transfer is avoided under section 554, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so order, the value of such property).

tively confer standing on the creditor to pursue those claims. *See Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.,)* 177 F.3d 774, 780–82 (9th Cir. 1999); *Briggs v. Kent (In re Prof'l Inv. Props.),* 955 F.2d 623, 625–26 (9th Cir. 1992); *see also Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani),* 325 B.R. 282, 288 (9th Cir. BAP 2005). In doing so, the court of appeals was cognizant that the statutes themselves do not authorize someone other than the trustee (or debtor in possession) to assert those claims. *See In re P.R.T.C., Inc.,* 177 F.3d at 780–81.[10]

■ The Defendants also argue that Plaintiffs do not have standing because the bankruptcy case has been dismissed, there is no longer a bankruptcy estate, and the avoidance actions therefore are not being asserted for the benefit of "all creditors." Neither the Defendants nor the Plaintiffs have been able to identify any authority specifically addressing whether the standing of a plaintiff-assignee to prosecute bankruptcy avoidance actions is affected by dismissal of the underlying bankruptcy case. Nevertheless, there is authority rejecting the underlying premise of these arguments: *i.e.,* that a creditor's standing to assert an assigned avoidance action de-

pends on the prospect of a recovery that will directly benefit the creditors of an estate. *See In re Lahijani,* 325 B.R. at 288.

In *In re Lahijani,* the creditor-appellant objecting to the sale of bankruptcy avoidance actions to another creditor argued that the actions should not have been sold where the assignee would not be pursuing those claims for the benefit of all creditors. Although the Bankruptcy Appellate Panel for the Ninth Circuit (the "BAP") reversed and remanded for other reasons, the BAP expressly rejected this argument:

> The difficulty with this argument is that, under the law of the circuit, trustee avoiding powers may be transferred for a sum certain. *P.R.T.C.,* 177 F.3d at 781–82; *Briggs,* 955 F.2d at 625–36. The benefit to the estate in such circumstances is the sale price, which might or might not include a portion of future recoveries for the estate. Thus, *P.R.T.C.* and *Briggs* do not mandate, as appellants contend that the avoidance powers can only be sold to a creditor who agrees to pursue those avoidance powers for the benefit of all creditors.

*In re Lahijani,* 325 B.R. at 288.

In *In re Professional Investment Properties* (referred to in the foregoing pas-

---

10. A complimentary line of authority holds that there is express statutory authority or "statutory standing" to transfer estate causes of action to creditors under Bankruptcy Code section 503(b)(3). *See* 11 U.S.C. § 503(b)(3); *Arab Monetary Fund v. Hashim (In re Hashim),* 379 B.R. 912, 920–22 (9th Cir. BAP 2007); *In re Godon, Inc.* 275 B.R. 555, 565–67 (Bankr. E.D. Cal. 2002). That statute provides that creditors may be allowed an administrative expense for the costs of recovering, for the benefit of the state, property transferred by the debtor. The statute reflects the continuation of a pre–Bankruptcy Code practice pursuant to which bankruptcy courts have permitted creditors—with judicial permission—to pursue estate causes of action for the benefit of creditors. *In re Hashim,* 379 B.R. at 920–22; *In re Godon, Inc.* 275 B.R. at 565–67. Here, at the time the Complaint was

filed, Plaintiffs were creditors of the bankruptcy estate seeking to recover property transferred to the Defendants by the Debtor. Further, Section 2.05 of the Settlement Agreement contemplated that if that agreement was not fully consummated, any recoveries on the Complaint would inure to the benefit of the Debtor's estate, subject to the Plaintiff's right to request an administrative expense under Section 2.05. Nevertheless, as the BAP has observed, the authority of bankruptcy courts to assign estate causes of action recognized in *In re P.R.T.C., Inc.* and *In re Professional Investment Properties* is much *broader* than the authority recognized in cases like *In re Hashim and In re Godon* and does not depend on the terms of Bankruptcy Code section 503(b)(3)(B). *See In re Lahijani,* 325 B.R. at 288.

sage as *Briggs* ), for instance, the court of appeals acknowledged the general proposition that a creditor may exercise the trustee's avoidance powers when "pursuing interests common to all creditors," but nevertheless approved the sale of avoidance actions to a single creditor, for its sole benefit. *See* 955 F.2d at 626 ("the estate's interest in the appeal terminated and ... all responsibility for the claim rested with [the creditor]"). The court observed that "[w]hile [the creditor] may be acting on his own, he does so with the apparent blessing of the bankruptcy court and the trustee. Clearly, it was in the estate's interests to resolve its involvement in the dispute." *Id.*

Thus, for purposes of a creditor-assignee's standing to pursue a bankruptcy avoidance action, it is sufficient that the estate benefit in some way from the assignment, not that any recovery on that action inure to the direct benefit of other creditors. *Accord Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290, 291–294 (7th Cir. 2003) (*ex ante* benefit conferred on the estate by a secured lender—that permitted the debtor in possession to use cash collateral and obtain postpetition financing to the detriment of its position—was a "benefit to the estate" enabling the lender to prosecute estate avoidance actions and recover avoidable transfers under Bankruptcy Code section 550 for its own benefit).

Here, the estate's bankruptcy avoidance causes of action were assigned as part of a global resolution of the bankruptcy case. In support of approval of the original settlement agreement, the Debtor argued that the settlement agreement was a benefit to the estate:

> Approval of the Settlement Agreement eliminates all of the disputes and the litigation risks associated therewith. The settlement creates certainty, subject to selling the St. Louis properties, and as-

signs the Bronson claims to Hoer as Hoer believes these claims have value. In addition, the Settlement Agreement provides that if it is consummated, Hoer assumes the cost of litigating the claims against Bronson, which eliminates the need to expend estate assets to pursue this claim.... The Settlement Agreement provides a measurable benefit to the Debtor's estate by avoiding litigation and facilitating an overall case resolution in an efficient manner without the attendant cost and delay of administration by a trustee.

Case Dkt. 62 at 4–5 (Compromise Motion); *see also* Case Dkt. 62 at 7–8 (Declaration of Katofsky in Support of Compromise Motion).

Moreover, the Debtor assigned the bankruptcy avoidance actions to Plaintiffs, who held by far the largest claims against the estate and, as of immediately before the bankruptcy case was dismissed, the *only remaining claim.* Given that Plaintiffs' claims against the Debtor exceeded the value of the Debtor's remaining assets, Plaintiffs were the only parties with an economic interest in the Debtor's estate. These facts are even more compelling than those presented in *In re Professional Investment Properties*, in which the Ninth Circuit approved the sale of estate actions to one creditor, *to the exclusion of other creditors.* 955 F.2d at 626. Here, there were no creditors other than Plaintiffs and no concern that a cause of action intended to benefit all creditors of the estate was being used to benefit some but not all of those creditors. In other words, the causes of action here are literally being prosecuted for the benefit of *all* of the Debtors' remaining creditors.

Finally, Defendants suggest that dismissal of a bankruptcy case somehow unwinds an assignment of estate causes of action that occurs prior to dismissal. This

makes no sense. It is true that upon dismissal, unless the Court orders otherwise, Bankruptcy Code section 349 (i) unwinds any avoided transfer of the debtor and (ii) revests all of the property of the estate in the entity that held it prior to the filing of the case. *See* 11 U.S.C. §§ 349(b)(1)(B), 349(b)(3). Nothing in section 349 disturbs the Court-approved assignment of estate assets prior to that dismissal. Even if it did, the Court here "provided otherwise." The Dismissal Order expressly provides that the orders approving the Settlement Agreement survive dismissal. *See* Case Dkt. 114.

### b. Judicial Approval

■ Derivative standing may be conferred in a variety of contexts. *See, e.g., In re Hashim,* 379 B.R. at 921–22 (stipulation permitting creditor to recover property for the benefit of estate); *In re Prof'l Inv. Props.,* 955 F.2d at 626 (sale of avoidance powers); *In re Spaulding Composites Co.,* 207 B.R. at 904 (stipulation authorizing unsecured creditors committee to pursue avoidance actions); *In re Curry and Sorensen, Inc.,* 57 B.R. at 828 (aggrieved creditor authorized to bring an action for the benefit of the estate based on "unjustifiable" refusal of debtor in possession to bring the action). In every instance, however, court approval is required. *See In re Hashim,* 379 B.R. at 921–22 ; *In re Prof'l Inv. Props.,* 955 F.2d at 626; *In re Spaulding Composites Co.,* 207 B.R. at 904; *In re Curry and Sorensen, Inc.,* 57 B.R. at 828. The requirement of court approval serves an important gatekeeping function with respect to the use of estate powers by anyone other than the trustee or debtor in possession. *See In re Racing Services, Inc.,* 540 F.3d 892, 903 (8th Cir. 2008) ("courts should not passively view the trustee's consent [as to do so] would be effectively ceding [the court's] gatekeeper function.... [C]onsent is a necessary, but

not sufficient condition ... in this context.").

■ The question presented here is whether the Court exercised this gatekeeping function and granted the Plaintiffs derivative standing when it approved the Settlement Agreement. Plaintiffs argue that the Debtor's assignment under the Settlement Agreement of "any and all causes of action ... under the Bankruptcy Code" leaves no doubt that the Debtor intended to confer its standing as a debtor in possession on Plaintiffs. Plaintiffs argue that the order granting approval of the Settlement Agreement—which simply says "the Debtor is authorized to enter into and consummate" the Settlement Agreement— is enough. Case Dkt. 71. Defendants argue that to confer the powers of the trustee or debtor in possession on a creditor, the Court would have had to enter an order expressly granting "standing."

■ The Defendants' argument has some appeal. The Settlement Agreement was approved under Federal Rule of Bankruptcy Procedure 9019. A bankruptcy court's "role in approving any settlement under Rule 9019 is limited. Rather than an exhaustive investigation or a mini-trial on the merits, [the Bankruptcy Court] need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable.... It has been held that the court's proper role is 'to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness.' " *In re Pac. Gas & Elec. Co.,* 304 B.R. 395, 416–17 (Bankr. N.D. Cal. 2004) (citing *In re Drexel Burnham Lambert Grp., Inc.,* 134 B.R. 493, 496–97 (Bankr. S.D.N.Y.1991)). The reality is that when a motion to approve a compromise is properly noticed and no objection is filed, it may receive less attention from a bankruptcy court than a compromise that is opposed. Further, when the proposed assignment of

estate claims is set forth in a settlement agreement, but the motion does not formally request (and the order does not expressly provide) that the assignee is granted "standing," it will not be readily apparent from the order precisely what has been approved. For these reasons, the better practice would have been to request an order expressly stating that the assignee is granted "standing" to assert those claims, in addition to approving the agreement that assigned the claims.

The Court, however, is not prepared to conclude that this was a fatal mistake. Defendants have cited no binding authority requiring this level of formality, and there is Ninth Circuit authority to suggest otherwise. In *In re Professional Investment Properties*, the court of appeals addressed the issue of whether a creditor "may exercise the trustee's avoidance powers." 955 F.2d at 625. The decision is, in essence, about derivative standing. When the court of appeals described what occurred in the bankruptcy court, it simply stated that "the bankruptcy court approved the trustee's sale of the estate's claim to the proceeds from the sale of the property...." *Id.* The court of appeals did not state that the bankruptcy court granted the assignee "standing." Indeed, the decision suggests that even the bankruptcy court's approval of the "sale of the estate's claim" was something less than express:

> Here, the trustee sold the estate's claim to the proceeds from the sale of the property with the ***tacit*** approval of the bankruptcy court. The court ordered the estate's interest in the appeal terminated and that all responsibility for the claim rested with Miller. While Miller may be acting on his own, he does so with the ***apparent*** blessing of the bankruptcy court and the trustee.

955 F.2d at 626 (emphasis added). If a bankruptcy court's tacit approval of the

assignment of an estate cause of action was adequate in *In re Professional Investment Properties* to empower the assignee to exercise the trustee's avoidance powers, the Court's approval of the Settlement Agreement in the case at bar should likewise be adequate for this purpose. By approving the Settlement Agreement pursuant to the Order Approving Compromise and Modification Order, the Court granted its tacit approval to the assignment of the Debtor's bankruptcy avoidance actions pursuant to that agreement and effectively authorized the Plaintiffs to prosecute those actions.

### c. Nunc Pro Tunc Judicial Approval

To the extent applicable law required Plaintiffs to obtain express approval to prosecute the Debtor's bankruptcy avoidance actions (rather than tacit approval), Plaintiffs request that the Court retroactively grant such express authorization. *See* Authorization Motion. Although the standard and better practice is to obtain court approval before filing bankruptcy avoidance actions that are based on derivative standing, a bankruptcy court may exercise its discretion to grant such approval retroactively—after the complaint has been filed but before recovery. *See In re Hashim*, 379 B.R. 912, 922 (9th Cir. BAP 2007); *In re Spaulding Composites Co., Inc.*, 207 B.R. 899 (9th Cir. BAP 1997). To the extent necessary, the Court concludes that it is appropriate to do so here.

At the time of the Settlement Agreement, the Debtor's bankruptcy avoidance actions were the only remaining estate assets of potentially significant value other than the St. Louis Properties. Plaintiffs had demanded that the Debtor prosecute these claims against the Bronson Family Trust, but the Debtor had rejected that request. *See* Adv. Dkt. 198 at 2–3 (Decl. of Brian M. Rothschild); Adv. Dkt. 228 at 2–

3 (Reply in Support of Plaintiffs' Authorization Motion). The Debtor's managing member, Katofsky, had a longstanding business relationship with the Bronson Family Trust. *Id.* These are precisely the kind of circumstances in which it is appropriate to authorize a creditor to prosecute bankruptcy avoidance actions.

■ The Defendants argue that the Court does not have jurisdiction to issue an order granting retroactive authorization because the underlying bankruptcy case has been dismissed. The Defendants' argument, however, ignores the Court' ancillary jurisdiction to "interpret" and "effectuate" its orders, even after the dismissal of the bankruptcy case. *See Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009); *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard),* 729 F.3d 1279, 1289–90 (9th Cir. 2013); *Aheong v. Mellon Mortg. Co. (In re Aheong),* 276 B.R. 233, 240 (9th Cir. BAP 2002); *Lawson v. Tilem (In re Lawson),* 156 B.R. 43, 46 (9th Cir. BAP 1993).[11]

■ "Actions are said to be ancillary to the original suit when brought in aid of an execution or to effectuate a judgment entered in the prior suit." *In re Lawson,* 156 B.R. at 46 (citing *Jones v. Nat'l Bank of Commerce,* 157 F.2d 214, 215 (8th Cir. 1946)). "[A]ncillary . jurisdiction exists where necessary to preserve a benefit the parties initially bargained for." *In re Wilshire Courtyard,* 729 F.3d at 1290 (discussing *Travelers,* 557 U.S. 137, 129 S.Ct. 2195). "That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled." *Id.* (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

Here, the Court is being asked to grant relief that effectuates the Order Approving Compromise and Modification Order. It is clear from the Court-approved Settlement Agreement that the Debtor intended to assign its bankruptcy avoidance actions to the Plaintiffs and that the Plaintiffs would prosecute those claims. The Settlement Agreement even contemplates that the Plaintiffs could begin pursuing those claims before the Settlement Agreement had been consummated. Entering an order that expressly confers "standing" on Plaintiffs to prosecute those claims retroactively would ensure that the Plaintiffs receive the benefit of their bargain under the Settlement Agreement. The Court rejects the Defendants' contention that the Settlement Agreement somehow assigned bankruptcy avoidance actions that the parties did not intend Plaintiffs to prosecute.

Finally, the Defendants argue that they would be prejudiced if the Court were to grant the Authorization Motion. The Court is not persuaded by this argument. The unquestionable intent of the parties to the Settlement Agreement was that the Debtor's bankruptcy avoidance actions be assigned to the Plaintiffs for prosecution. The entry of an order clarifying that Plaintiffs have the *express* authority of the Court to prosecute those claims would not

---

11. The Defendants cite Bankruptcy Code section 349 in support of their jurisdiction argument, but the statute does nothing to support their argument. The statute provides for the unwinding of certain orders entered during the case upon dismissal, subject to a proviso that the bankruptcy court may order otherwise. *See* 11 U.S.C. § 349(b). Although the orders approving the Settlement Agreement are not among the types of orders that would be unwound upon dismissal, the Dismissal Order expressly provides that those orders will survive dismissal. *See* Case Dkt. 114. Moreover, nothing in that statute precludes the Court's exercise of ancillary jurisdiction under the circumstances presented.

prejudice the Defendants any more than the prior orders approving the Settlement Agreement. Moreover, the parties have been litigating in this Court for approximately two years. If the court denied the Authorization Motion and granted the Motion to Dismiss, the Plaintiffs would have to start over in another forum, giving the Defendants' an unfair tactical advantage.

For the foregoing reasons, the Authorization Motion will be granted.

### d. Standing Against Individual Defendants.

■■■ The Complaint asserts bankruptcy avoidance actions under Bankruptcy Code sections 544 and 548 against defendants David Bronson, Nancy Bronson and Joslyn Bronson (collectively, the "Individual Defendants"), in addition to the Bronson Family Trust. The Defendants argue that Plaintiffs may not proceed against the Individual Defendants on these claims because the Settlement Agreement only assigns the Debtor's litigation rights against the Bronson Family Trust. The Defendants are correct that the Settlement Agreement does not assign estate causes of action against the Individual Defendants, but their argument nevertheless must be rejected. The Plaintiffs' claims against the Individual Defendants are not based on any direct rights of action the Debtor held against them, but those that are derivative of the rights the Debtor held against the Bronson Family Trust (which were assigned under the Settlement Agreement). Specifically, the Complaint alleges that the Individual Defendants are the alter egos of the Bronson Family trust. *See* Complaint at ¶¶ 10, 11, 12, & 15. "Alter ego" liability is a remedial doctrine that allows a creditor to hold a third party liable for a debtor's obligation. *See e.g., Bd. of Trs. of Mill Cabinet Fund v. Valley Cabinet & Mfg.*, 877 F.2d 769, 772 (9th Cir. 1989). Accordingly, the Plaintiffs' standing to assert these claims arises from the Debtor's assignment of its claims against the Bronson Family Trust.

### 2. Adequacy of Factual Allegations

■■■ The Defendants argue that the factual allegations in the Complaint are insufficient to support a cause of action for intentional fraudulent transfer · under Bankruptcy Code section 548(a)(1)(A) or constructive fraudulent transfer under Bankruptcy Code section 548(a)(1)(B). In each instance, the Defendants' argument fails.

■■■ The elements of an actual fraudulent transfer are: (i) the debtor transferred an interest in property or incurred a debt; (ii) on or within two years before the petition filing date; (iii) with actual intent to hinder, delay, or defraud a present or future creditor. 11 U.S.C. § 548(a)(1)(A). Because this cause of action requires an allegation of actual intent to hinder, delay or defraud, the heightened pleading standard applicable to allegations of fraud is applicable. *Screen Capital Int'l Corp. v. Library Asset Acquisition Co., Ltd.*, 510 B.R. 248, 257 (C.D. Cal. 2014). That standard requires allegations of fraud to be pleaded with particularity. *See* Fed. R. Civ. P. 9; Fed. R. Bank. P. 7009; *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103–05 (9th Cir. 2003). In other words, a complaint must plead the "who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba–Geigy Corp.*, 317 F.3d at 1106.

The Plaintiffs' actual fraudulent intent allegations satisfy these requirements. The Plaintiffs allege a fraudulent scheme involving sham transactions and concealment, designed to deplete the Debtor of its assets for the benefit of its equity holders—who have longstanding relationships with the Debtor's principal. *See* Complaint at ¶¶ 14–47. The Defendants attempt to characterize these allegations as showing nothing more than the preference of one creditor over another. The Court dis-

agrees. The Complaint alleges a fraudulent scheme to favor the Debtor's equity holders at the expense of a creditor. The Defendants are free to argue at trial that the Debtor did not have fraudulent intent. But for purposes of the Motion to Dismiss, the Court concludes that the intent element of Bankruptcy Code section 548(a)(1)(A) is sufficiently pled.

The elements of a constructive fraudulent transfer are that (i) the debtor transferred property or incurred a debt for less than "reasonably equivalent value;" and (ii) the debtor: (I) was insolvent at the time or was rendered insolvent by the transfer; or (II) was engaged or about to engage in a business or transaction for which the debtor's remaining assets were unreasonably small in relation to the business or transaction; or (III) intended to incur or believed (or reasonably should have believed) that it would incur debts beyond its ability to repay; or (IV) made the transfer (or incurred the obligation) to or for the benefit of an insider under an employment contract and not in the ordinary course of business. 11 U.S.C. § 548(a)(1)(B).

The Defendants argue that this cause of action cannot be sustained because the Debtor was not actually insolvent at the time of the Transfer. The Defendants' factual allegations, however, are irrelevant to the Motion to Dismiss. The question presented by the Motion to Dismiss is whether Plaintiffs have adequately pled the element of insolvency. The Court concludes that they have. A debtor may be considered "insolvent" when its debts exceed its assets (excluding assets that have been transferred, concealed or removed with intent to hinder, delay or defraud creditors). This is known as the "balance sheet" test. *See* 11 U.S.C. § 101(32)(A); *In re Sierra Steel, Inc.*, 96 B.R. 275, 277 (9th Cir. BAP 1989). A debtor also may be considered "insolvent" when a transfer renders or the debtor is sufficiently undercapitalized. 11

U.S.C. § 548(a)(1)(B)(ii)(II); *see, e.g., In re GGW Brands, LLC*, 504 B.R. 577, 633 (Bankr. C.D. Cal. 2013). Using either test, Plaintiffs' allegations are sufficient.

### 3. Applicability of Utah Law

The Defendants contend that Plaintiffs' avoidance claims under Bankruptcy Code section 544 and applicable state law must be dismissed because the Complaint improperly relies on Utah law. Defendants assert, instead, that California law is applicable. The argument fails for several reasons. First, Defendants overlook that the Complaint pleads in the alternative that California law is applicable. *See* Complaint ¶ 57 fn. 1 ("Alternatively, the California [Uniform Fraudulent Transfer Act ("UFTA") ], California Civil Code § 3439–3439.12, inclusive, applies and has substantially similar provisions. The Transfer and the Other Transfers are equally avoidable under the California UFTA, and the Plaintiffs allege all causes of action under the California UFTA as if set forth fully herein.").

▮ Second, the Defendants' argument is premised on a Second Circuit case regarding choice of law rules, *see In re Thelen LLP*, 736 F.3d 213 (2d Cir. 2013) (applying the choice of law rules of the forum state), which is contrary to the choice of law rules under Ninth Circuit law. In a bankruptcy case, this Court must apply federal choice of law rules, rather than the rules of the forum state. *In re Vortex Fishing Systems*, 277 F.3d 1057, 1069 (9th Cir. 2002). Ultimately, if the parties are unable to stipulate regarding which state's law applies, the Court will decide, based on supplemental briefing and an evidentiary record. At this point, however, the Defendants' arguments regarding choice of law are not an adequate basis for dismissal.

### C. Insufficient Service of Process

The title of the Motion to Dismiss suggests that the Defendants are also seeking

dismissal under Federal Rule of Bankruptcy Procedure 12(b)(5) for insufficient service. The motion itself, however, contains no argument on this issue, and the Court previously has ruled that service of the Complaint and summons in this case were sufficient. *See Order Denying Ex Parte Application to Continue Hearing*, Adv. Dkt. 81, ¶ 3. The Complaint and the summons were served on the Defendants by first class mail on February 3, 2015, in accordance with FRBP 7004(b). *See* Adv. Dkt. 4.

■ Furthermore, the Defendants have waived any service of process defense by failing to raise it in the first motion to dismiss. *See* Adv. Dkt. 5. The waiver provision in Federal Rule of Civil Procedure 12(h)(1) compels defendants to raise defenses, including defective service under Rule 12(b)(5), in the first pre-answer motion under filed under Rule 12 or, if no such motion is made, in the answer. *See* Fed. R. Civ. P. 12(g)-(h); *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir. 1983) (noting this rule avoids the waste of judicial effort that would result if such defenses were allowed at later stages of the proceedings). *See also* 5C Wright and Miller, Federal Practice and Procedure, §§ 1385 & 1391 (3d Ed.). This is Defendants' *second* motion to dismiss.

To the extent the Motion to Dismiss requests dismissal under Rule 12(b)(5), the motion is denied.

## IV. CONCLUSION

For the forgoing reasons, the Motion to Dismiss is DENIED and the Authorization Motion is GRANTED.